FISH AND WILDLIFE DEPARTMENT, *Petitioner,*

*v.*

LAND CONSERVATION AND DEVELOPMENT
COMMISSION et al, *Respondents.*

(LCDC No. 77-017, CA 10172)

FISH AND WILDLIFE DEPARTMENT, *Petitioner,*

*v.*

LAND CONSERVATION AND DEVELOPMENT
COMMISSION et al, *Respondents.*

(LCDC No. 77-022, CA 10171)

(Cases consolidated)

588 P2d 80

[ 607-a ]

Gregory R. Mowe, Portland, argued the cause for petitioner. With him on the briefs were Stephen T. Janik, Jennifer J. Johnson, and Davies, Biggs, Strayer, Stoel and Boley, Special Assistant Attorneys General, Portland.

James A. Redden, Attorney General, and Al J. Laue, Solicitor General, Salem, attorneys for respondents Land Conservation and Development Commission, Dorothy Anderson, J. W. Forrester, Dick Gervais, Lorin Jacobs, John Mosser, James Smart, Anne Squier and Dennis Fuller, in their capacity as members of the Oregon Land Conservation and Development Commission, and Land Conservation and Development Department, Wes Kvarstan, Director, joined in portions of the respondents' briefs.

William E. McCann, Deputy District Attorney, Bend, argued the cause for respondent Deschutes County. Louis L. Selken, District Attorney, and William E. McCann, Deputy District Attorney, Bend, attorneys for respondent Deschutes County, joined in portions of the respondents' briefs.

Donald McCallum, P. C., Bend, argued the cause and filed the brief for respondents Sun Country Land & Cattle Company, an Oregon corporation, and George E. Wright and Lois L. Wright.

Robert S. Lovlien, Bend, argued the cause for respondents Brooks Resources Corporation, an Oregon corporation, and Lelco, Inc., an Oregon corporation. With him on the briefs was Gray, Fancher, Holmes & Hurley, Bend.

John Gould, Portland, argued the cause for respondent John Leason. With him on the brief was Dezendorf, Spears, Lubersky & Campbell, Portland.

Before Schwab, Chief Judge, and Thornton, Tanzer* and Buttler, Judges.

# BUTTLER, J.

*Tanzer, J., did not participate in this decision.

**BUTTLER, J.**

Petitioner Oregon Department of Fish and Wildlife (Department) appeals from two orders of the Land Conservation and Development Commission (LCDC) which dismissed the Department's Petitions for Review on the ground that the Department failed to exhaust its "administrative remedies." The cases were consolidated for the purposes of this appeal.

The Department petitioned LCDC to review the approval by the Board of County Commissioners of Deschutes County of six preliminary subdivision plats. Five of the plats were approved by the Deschutes County Planning Commission (Planning Commission) on May 25, 1977, and were the subject of LCDC Case No. 77-017; the sixth plat received approval June 8, 1977, and was the subject of LCDC Case No. 77-022.

During the spring of 1977 petitioner appeared before the Planning Commission during hearings on applications for approval of the six subdivisions to voice its concern over the possible conflict between the subdivision development and the requirements of LCDC Goal 5 that wildlife areas and habitat be protected.[1] Evidence was presented by petitioner showing that the proposed subdivisions would interfere with deer migration routes between summer and

---

[1] OAR 660-15-000, Appendix A, p 41, Goal 5 — Open Spaces, Scenic and Historic Areas, and Natural Resources provides in pertinent part:

"To conserve open space and protect natural and scenic resources.

"Programs shall be provided that will: * * * (2) protect scenic and historic areas and natural resources for future generations * * *. The location, quality and quantity of the following resources shall be inventoried:

"* * * * *

"d. Fish and wildlife areas and habitats;

"* * * * *

"Where no conflicting uses for such resources have been identified, such resources shall be managed so as to preserve their original character. Where conflicting uses have been identified the economic, social, environmental and energy consequences of the conflicting uses shall be determined and programs developed to achieve the goal.

"* * * * *"

winter feeding grounds. Petitioner argued that Goal 5 was applicable to these individual subdivision approvals.

At its meeting of May 25, 1977, the Planning Commission approved five preliminary subdivision plats. The County ordinance at that time, notwithstanding the provisions of ORS 92.044,[2] only permitted a subdivider to appeal an adverse decision of the Planning Commission to the County Board of Commissioners.[3] On June 1, 1977, the ordinance was

---

[2] ORS 92.044 provides in pertinent part:

"(1) The governing body of a county * * * shall, by regulation or ordinance, adopt standards and procedures, [for] * * * the submission and approval of tentative plans and plats of subdivisions and governing the submission and approval of tentative plans and maps of major partitions.

"* * * * *

"(2) The governing body of a city or county may provide for the delegation of any of its lawful functions with respect to subdivisions and major partitions to the planning commission of the city or county or to an official of the city or county appointed by the governing body for such purpose. If an ordinance or regulation adopted under this section includes the delegation to a planning commission or appointed official of the power to take final action approving or disapproving a tentative plan for a subdivision or major partition, such *ordinance or regulation shall also provide* for appeal to *the governing body from such approval* or disapproval and require *initiation* of any such appeal *within 30 days* after the date of the approval or disapproval from which the appeal is taken."

"* * * * *." (Emphasis added.)

[3] Deschutes County Subdivision Ordinance No. PL-2, § 505(E) (1970) provided:

"If the subdivider is dissatisfied with any action of the Planning Commission with respect to the preliminary plat, he may, within ten (10) days of such action, appeal the action of the Planning Commission to the County Board of Commissioners. An appeal shall be filed with the Board of Commissioners, in writing, and shall state specifically wherein it is claimed there was an error or abuse of discretion by the Planning Commission.

"The Board of Commissioners shall give notice to the subdivider and the Planning Commission of the date when the appeal of the subdivider is to be heard. At its next regular meeting, the County Board of Commissioners shall review the action of the Planning Commission and the written appeal of the subdivider and shall report its action to the subdivider and to the Planning Commission in writing. When an appeal is filed and heard by the County Board of Commission-

amended to provide others, including petitioner, a right of appeal to the County Board of Commissioners.[4] On June 8, 1977, the Planning Commission approved the sixth subdivision plat, which is located in an area different from the other five plats.

The Planning Commission did not make any findings of fact in any of its decisions with respect to Goal 5, even though evidence and proposed findings had been presented to it.

Petitioner did not appeal either decision of the Planning Commission to the Board of Commissioners. Under the terms of the county ordinance as it stood prior to June 1, 1977, decisions by the Planning Commission were automatically sent to the Board of Commissioners for review. If the Board did not act within ten days of the Planning Commission's action, that decision was automatically affirmed.[5] Both of the decisions involved herein were affirmed by the Board

---

ers, such hearing shall constitute meeting the requirements of review and action by the County Board of Commissioners as prescribed in Paragraph D of this Section."

[4] Amendment to Deschutes County Ordinance No. PL-2 (effective June 2, 1977):

"Section 3.000. *Appeal from Decision of Requirement of the Planning Commission.* Any decision or requirement of the Planning Commission may be appealed to the Board of Commissioners pursuant to the procedures established by the Deschutes County Uniform Hearing Procedures except that such appeal may be filed within thirty days after the date of the decision or requirement from which the appeal is taken."

[5] Deschutes County Subdivision Ordinance, No. PL-2, § 505(D) provided:

"(D) Within five (5) days after the date of the Planning Commission's action, the Planning Director shall transmit the complete record of its review and action to the County Board of Commissioners. Upon receipt of the record, the County Board of Commissioners may review the decision of the Planning Commission. The County Board of Commissioners may affirm, reverse or modify the decision of the Planning Commission provided that such decision is not in conflict with the provisions and intent of this ordinance. Unless notified within ten (10) days, the decision of the Planning Commission shall be affirmed."

of Commissioners, by virtue of its failure to act within the specified time.

Thereafter petitioner appealed the two orders, encompassing all six of the subdivision approvals, to LCDC. After a consolidated hearing, the hearings officer's recommendations were submitted to, and adopted by, LCDC. At the outset, the Board of Commissioners contended the Department did not have standing to seek LCDC review. LCDC rejected that contention based upon an opinion of the Attorney General. On the merits, while the hearings officer and LCDC stated that Goal 5 was applicable to subdivision permit approvals and that a possible conflict between land use decisions in Deschutes County and elements of Goal 5 had been identified, the Department's petitions for review were dismissed because, LCDC determined, petitioner had failed to exhaust administrative remedies by not appealing the Planning Commission's decisions to the Board of Commissioners.

I. STANDING

The Department lacked standing to appeal the decision of the Board of Commissioners unless the 1977 amendment to ORS 197.300(1)(b) may be applied retroactively. At the time the County took its action, ORS 197.300(1)(b) authorized LCDC review of county actions believed to violate the state-wide planning goals, but state agencies were not among those authorized to petition for such review. However, under the 1977 amendments to ORS 197.300(1)(b), state agencies are specifically authorized to petition LCDC for review, but the amendment did not become effective until July 1, 1977. Petitions for review in these cases were filed July 25, 1977. Respondents contend that the amendment was not intended to be applied retroactively and, therefore, the Department does not have standing to petition LCDC to review a claimed violation of the state-wide planning goals occurring prior to the effective date of the law.

[ 612 ]

■■ Whether a statute is retrospective in its operation is a question of legislative intent. *Perkins v. Willamette Industries,* 273 Or 566, 570-71, 542 P2d 473 (1975).

"Essentially, determining whether a particular statute was meant to apply prospectively or retrospectively is a matter of ascertaining the intent of the legislature. In the absence of an explicit indication of that intent, it is our duty to determine the legislature's probable intent. *Although it is sometimes said that remedial* [footnote omitted] *and procedural statutes are normally applied retroactively* [citations omitted], *that rule is merely a rule of construction.* Like other rules of construction, *it is not conclusive but only a guide to the proper interpretation of the statute. See Joseph v. Lowery,* 261 Or 545, 552, 495 P2d 273 (1972)." (Emphasis added.)

The amendment to ORS 197.300(1)(b) is remedial in that it gives a state agency a remedy where it had none, or a different one, before. *Perkins v. Willamette Industries, supra,* 273 Or at 571, n 1.

The statute is silent on whether it should be applied retrospectively. Given the pervasive scheme through which the legislature had evidenced its intention that land use planning be coordinated among cities, counties, special districts, and state agencies, ORS 197.040(2)(f), 197.180(2), 197.190(1), and that actions taken by any of those bodies individually be consistent with the state-wide planning goals, ORS 197.175(1), 197.180(1), 197.250, 197.275(2), 197.300(1)(b), Oregon Laws 1977, ch 664, § 34(4), we conclude that the probable intent of the legislature was to apply the amendment retrospectively. Limiting the application of the amendment to actions occurring after July 1, 1977, would not serve the need for coordination of preamendment actions between the different governmental units. Applying the amendment retrospectively would tend to accomplish that purpose more fully.

As against the foregoing reasons supporting retroactive application of the amendment, we see no reason for not doing so. Neither the rights nor obligations of the County would be affected. Accordingly, we

hold that petitioner had standing to seek review and LCDC has jurisdiction to entertain the petitions.

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Normally, the "exhaustion of administrative remedies" doctrine is applied where judicial review of administrative action is sought. We are not aware of any authorities applying the doctrine to situations involving administrative review by an administrative agency (LCDC here) of another agency's action. However, the reasons which support the doctrine's application in judicial review also support its application in administrative review: (a) the "first-level" decision-making process is not prematurely interrupted; (b) the local body with specialized expertise and with the most information available to it is given full opportunity to determine factual and policy questions with which it is familiar; (c) compromise solutions are promoted; (d) issues and facts are clarified and a complete and well-organized record is made; (e) protracted and expensive litigation may be avoided. *See* K. Davis, Administrative Law Treatise, § 20.00 (1958); *cf. Fifth Avenue Corp. v. Washington Co.,* 282 Or 591, 614, 581 P2d 50 (1978); *Bay River v. Envir. Quality Comm.,* 26 Or App 717, 554 P2d 620 (1976).

In the context of land use planning as it exists in this state, there is, perhaps, an even more compelling reason to require interested parties to exhaust local remedies before asking a state agency (or court) to review the action complained of. It is contemplated that land use decisions, from a comprehensive plan down to zone changes or variances, will be made at the local level, subject to statewide goals and guidelines, and that only as a last resort is the state agency (or court) asked to intervene. Within this framework, LCDC statutorily exercises quasi-judicial review over another quasi-judicial process (county subdivision plat approval) in a manner similar to judicial review of agency action, although the analogy is not complete.

[ 614 ]

*See Board of Comm. of Clackamas County v. LCDC,* 35 Or App 725, 582 P2d 59 (1978).

■ We are not called upon to determine in this case whether LCDC *must* require exhaustion of local remedies before it reviews a local land use action, but only whether it *may* do so under the circumstances here presented. We note that LCDC has authority under ORS 197.305(2) to adopt "such rules, procedures and regulations as are appropriate for the conduct of review proceedings." We hold that LCDC, pursuant to that authority, may require exhaustion of local remedies to insure that local governing bodies have full opportunity to hear, consider and decide those issues over which the local body has particular interest and expertise, and to permit all interested parties an opportunity to be heard, thereby promoting the policy of citizen involvement in land use planning matters.

Notwithstanding that authority, LCDC has not adopted any rules or procedures relating to exhaustion. (*See* OAR chapter 660.) While we would defer to such rules, once adopted, so long as they are not arbitrary or contrary to the policy of the statutory scheme in land conservation and development matters, in the absence thereof, we are left to apply the exhaustion doctrine as it is generally applied in connection with judicial review of administrative proceedings.

■ Assuming, then, that as a general proposition, exhaustion of local remedies should be a prerequisite to LCDC review, the application of the exhaustion doctrine is governed by discretion and there are circumstances in which exhaustion need not be required. *Fifth Avenue Corp. v. Washington Co., supra; Marbet v. Portland Gen. Elect.,* 277 Or 447, 456, 561 P2d 154 (1977); *Bay River v. Envir. Quality Comm., supra. See also* K. Davis, *supra.* The Supreme Court, in *Fifth Avenue Corp. v. Washington Co., supra,* divided the issue of whether exhaustion should be

required in a particular situation into three questions:

"* * * This important issue may be divided into three separate questions: (1) Were the nonjudicial remedies to be pursued by the plaintiff truly 'administrative' or were they legislative in nature? (2) If 'administrative,' were these potential remedies truly available to the plaintiff at the time he filed suit for a declaratory judgment? (3) If available, were they adequate to address plaintiff's desire to use the subject property as plaintiff wished?" 282 Or at 615.

There is an additional exception, which is, perhaps, a refinement of the adequacy exception, based upon futility of pursuing the administrative remedy. We applied that exception in *Albright v. Employment Appeals Board,* 32 Or App 379, 382, 574 P2d 344 (1978), but pointed out that it is available only in certain narrowly defined situations. We said:

"* * * Professor Jaffe's discussion [*The Exhaustion of Administrative Remedies,* 12 Buff L Rev 327 (1962)] indicates that the futility exception is limited to two situations: (1) an aggrieved person need not petition the agency for rehearing, prior to seeking judicial review, when the granting of a rehearing is discretionary and the person's argument has already been unsuccessful before the agency in the first instance; and (2) a person need not submit a claim to an agency which has already taken a contrary position through promulgation of regulations, policies, or informal interpretive memoranda. * * *"

Little would be gained by an extended discussion of whether petitioner's local remedies were administrative or legislative,[6] because we conclude that with respect to the five plats approved May 25, 1977,

---

[6]While it is clear that the approval of subdivision plats is a quasi-judicial or administrative determination (*Commonwealth Properties v. Washington County,* 35 Or App 387, 582 P2d 1384 (1978); *Bienz v. City of Dayton,* 29 Or App 761, 566 P2d 904, *rev den* (1977)), petitioner's objection in the proceedings before the planning commission was not only to the six subdivisions involved, but to approval of *any* further subdivision until the County had made a study to determine how to accommodate Goal 5 and incorporate the results thereof in the County's existing 1971 comprehensive plan, which would appear to be a legislative matter. *See Fasano v. Washington Co. Comm.,* 264 Or 574, 581, 507 P2d 23 (1973).

petitioner could not reasonably be required to pursue a remedy not available on that date, and with respect to the plat approved June 8, 1977, any attempt to pursue the then available local remedy would have been futile.[7]

A. Plats approved on May 25, 1977.

■ As pointed out above, when the Planning Commission voted approval of five subdivision plats on May 25, 1977, the County ordinance provided a right of appeal to the Board of Commissioners only to aggrieved subdividers. It was not until June 1, 1977, that the ordinance was revised, effective June 2, 1977, to conform to ORS 92.044, at which time petitioner would have had a local remedy. While a reasonable argument may be made that the section of the ordinance granting a right of appeal to others that subdividers, being a part of the revised county subdivision ordinance, may not be applied retroactively (ORS 215.110(1)(e) and (5)),[8] there is little doubt, if any, that petitioner would have had the right to appeal thereunder. (*See* discussion under Standing, *supra.*) Such a conclusion, however, does not invoke the exhaustion doctrine where the right did not exist at the time of the decision to be appealed. It would not be reasonable to require a person to inquire into his right of appeal other than at the time the questioned decision is made or entered, and if no such right exists at that time he need not make periodic checks thereafter to determine if his rights have been enlarged. In short, petitioner may

[7]The futility exception may also be applicable to the earlier order.

[8]ORS 215.110(1)(e) and (5) provides:

"(1) A planning commission may recommend to the governing body ordinances intended to implement part or all of the comprehensive plan. The ordinances may provide, among other things, for:
"* * * * *
"(e) Controlling subdivision and partitioning of land,
"* * * * *
"(5) No retroactive ordinance shall be enacted under the provisions of this section."

have had the right after June 2, 1977, to appeal the earlier decisions, but not the obligation.

Respondent contends, and LCDC agreed, that petitioner could have appealed the Planning Commission's decision under the authority of ORS 92.044 even though the County's procedures did not so permit, because petitioner could have forced the County to amend its procedures and accept petitioner's appeal. It is clear, however, that the contention would have involved legislation—a change in the County ordinance which would produce a "policy which is applicable to an open class of individuals." *Fifth Avenue v. Washington Co., supra; Fasano v. Washington Co. Comm.,* 264 Or 574, 581, 507 P2d 23 (1973). Even if such a remedy were available, it is not required under the exhaustion doctrine.

We hold that there was no "administrative remedy" for petitioner to exhaust at the time of the May 25, 1977 decisions and that it was permissible for it to appeal directly to LCDC.

B. Plat approved June 8, 1977.

■ When the Planning Commission gave its final approval to the single subdivision plat on June 8, 1977, the County ordinance had been amended so that petitioner had available a local administrative remedy—the right to appeal to the County Board of Commissioners. However, we think the record supports petitioner's contention that it would have been futile to have appealed to the Board. On May 4 and 5, 1977, a subdivider had appealed an adverse decision of the Planning Commisssion to the Board, and petitioner participated in the appeal making the same contention with respect to Goal 5 which it now makes. All three of the commissioners stated that the existing comprehensive plan "addressed" and complied with Goal 5, and therefore it was not necessary to apply the goal to each subdivision—in other words, it was a legislative matter which had already been resolved.

[ 618 ]

LCDC Goal 5 became effective January 1, 1975. ORS 197.250. It is clear that during the period from January 1, 1975, until Deschutes County completed its revision of its 1971 comprehensive plan, Goal 5 was to be applied to individual subdivision approvals. *Sunnyside Neighborhood v. Clackamas Co. Comm.*, 280 Or 3, 569 P2d 1063 (1977); *1000 Friends v. Benton County*, 32 Or App 413, 575 P2d 651 (1978). Therefore, the Planning Commission and the Board of Commissioners were required to comply with the goal.

It is apparent from the record that the Board of Commissioners had previously determined that their comprehensive plan complied with Goal 5, and therefore it was not necessary to apply it, and while it was considered, they did not apply it, in any of its previous subdivision approvals. As further evidence of the Board's position, an order of the Board approving two subdivisions in August, 1977, was reversed by LCDC for failure to comply with Goal 5. (LCDC Order 77-029.)

Under these circumstances, requiring petitioner to appeal to the Board of Commissioners would have been futile: the Board had already taken a contrary position. *Albright v. Employment Appeals Board, supra.* In so holding, we are applying the futility exception as it is generally recognized by courts. This is not to say that LCDC, pursuant to ORS 197.305(2), may not adopt a more restrictive rule requiring exhaustion of local remedies even though they may be futile.[9] It has not done so, however, and before the strict rule may be imposed by LCDC, it must adopt rules so that parties will know what is required of them.[10]

---

[9] Such a strict rule would have the merit of obviating an inquiry into the question of futility.

[10] As we have pointed out, the rules should be fashioned in the first instance by LCDC to fit the unique position it holds in the statutory scheme. If, however, LCDC does not adopt rules with respect to exhaustion, we may do so in future cases in a manner not necessarily limited by traditional rules applicable to judicial review.

Having concluded that petitioner had standing to seek LCDC review and was not required to exhaust local remedies under the circumstances of this case, we conclude further that LCDC should not have dismissed the petitions for review. Accordingly, we reverse and remand for such further proceedings as may be appropriate.

Reversed and remanded.