Argued and submitted May 7, decisions of Court of Appeals and judgments of circuit courts are affirmed October 1, 1992

RUSSELL B. BARTZ,
*Petitioner on Review,*

*v.*

STATE OF OREGON,
*Respondent on Review.*

(Deschutes County CC 90-CV-0091-TM;
CA A67398; SC S38915)

HOMER BRITAIN,
*Petitioner on Review,*

*v.*

Manfred MAASS,
Superintendent, Oregon State Penitentiary,
*Respondent on Review.*

(Marion County CC 90-C-11681;
CA A67827; SC S39107)
(Cases Consolidated for Opinion)

839 P2d 217

Steven K. Chappell, Bend, argued the cause and filed the petition for petitioner on review Bartz.

Jay Edwards, Salem, argued the cause and filed the petition for petitioner on review Britain.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause for respondents on review.

GRABER, J.

## GRABER, J.

These cases[1] present questions concerning the meaning and constitutionality of ORS 138.510(2), a provision of the Post-Conviction Hearing Act (PCHA), ORS 138.510 to 138.680. As amended in 1989, ORS 138.510(2) imposes a 120-day period of limitation on the filing of petitions for post-conviction relief. It also provides an exception:

"(2) A petition pursuant to [the PCHA] must be filed within 120 days of the following, unless the court on hearing a subsequent petition finds grounds for relief asserted which could not reasonably have been raised in the original or amended petition:

"(a) If no appeal is taken, the date the judgment or order on the conviction was entered in the register.

"(b) If an appeal is taken, the date the appeal is final in the Oregon appellate courts."

Each of the petitioners filed a petition for post-conviction relief more than 120 days after his judgment of conviction was entered in the register. Neither petitioner filed an appeal. Petitioners' convictions became final after the 1989 amendment to ORS 138.510(2) took effect. Therefore, the 120-day time limit applies. *See Boone v. Wright,* 314 Or 135, 836 P2d 727 (1992) (1989 amendment to ORS 138.510 (2) does not apply to petitions filed by persons whose convictions became final before the effective date of the amendment). In each of these cases, the defendant filed a motion to dismiss the petition as untimely under ORS 138.510(2), and in each case the post-conviction court dismissed the petition.

Petitioners appealed. Petitioner Bartz contended that he falls within the exception described in ORS 138.510 (2). Alternatively, he contended that the statute is unconstitutional on two grounds: that it suspends the writ of habeas corpus, in violation of Article I, section 23, of the Oregon Constitution,[2] and Article I, section 9, clause 2, of the

---

[1] We have consolidated these two cases for the purpose of opinion, because they concern the same statute and present a common constitutional question.

[2] Article I, section 23, provides:

"The privilege of the writ of *habeas corpus* shall not be suspended unless in case of rebellion, or invasion the public safety require it." (Emphasis in original.)

Constitution of the United States;[3] and that it violates his Fourteenth Amendment right to due process of law.[4] Petitioner Britain argued that ORS 138.510(2) is inconsistent with another provision of the PCHA, ORS 138.530(2). He also challenged the constitutionality of the provision on the ground that it impermissibly suspends the writ of habeas corpus, citing Article I, section 23, of the Oregon Constitution.

The Court of Appeals held that petitioner Bartz was not excused from filing his petition within the 120-day limitation period and that ORS 138.510 is not unconstitutional for the reasons that Bartz advanced. Accordingly, that court affirmed the dismissal of Bartz's petition for post-conviction relief. *Bartz v. State of Oregon*, 110 Or App 614, 825 P2d 657 (1992). The Court of Appeals also affirmed the dismissal of petitioner Britain's petition for post-conviction relief. *Britain v. Maass*, 111 Or App 438, 825 P2d 657 (1992).

■ We allowed both post-conviction petitioners' petitions for review to address the important issues raised and now affirm. Petitioner Bartz's claim does not fall within the exception to the 120-day limitation period, and ORS 138.510 (2) is consistent with ORS 138.530(2). ORS 138.510(2) neither suspends the writ of habeas corpus nor violates petitioners' federal due process rights.

## THE MEANING OF ORS 138.510(2)

### A. *The Exception.*

Petitioner Bartz pleaded guilty to rape in the third degree, ORS 163.355, and was placed on probation. He did not appeal. Therefore, his conviction became final on the day that the judgment of conviction was entered in the register. One hundred forty-five days later, Bartz filed a petition for post-conviction relief. In it, he asserted that his trial counsel had

---

[3] Article I, section 9, clause 2, provides:

"The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."

[4] The Fourteenth Amendment to the Constitution of the United States provides in part:

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law * * *."

failed to advise him of a possible statutory defense to the charge and that he did not learn of the defense within 120 days after his conviction became final. Bartz contends that, because his trial counsel failed to advise him of an available statutory defense, he could not reasonably have known of that defense within the 120-day period and that he therefore falls within the exception provided in ORS 138.510(2).

■    We are called on to interpret this passage in ORS 138.510:

"(2)   A petition pursuant to [the PCHA] must be filed within 120 days of the following, *unless the court on hearing a subsequent petition finds grounds for relief asserted which could not reasonably have been raised in the original or amended petition*[.]" (Emphasis added.)

The Court of Appeals majority interpreted the emphasized clause to permit a petitioner to file a late petition whenever the petitioner alleges and proves that the grounds for relief asserted could not reasonably have been raised within 120 days after the petitioner's conviction became final. *Bartz v. State of Oregon, supra*, 110 Or App at 617-18. The dissent countered that "the language of [ORS 138.510(2)] makes the availability of any extraordinary relief expressly contingent on the filing of an original *timely* petition." *Id.* at 621 (Buttler, P. J., dissenting) (emphasis in original). We agree with the Court of Appeals majority.

Our task in interpreting a statute is to discern the intent of the legislature. ORS 174.020; *State ex rel Juv. Dept. v. Ashley*, 312 Or 169, 174, 818 P2d 1270 (1991). We begin with the text and context of the statute. ORS 174.010; *Boone v. Wright, supra*.

In this instance, the words of the statute do not clearly express the legislature's intention. ORS 138.510(2) is ambiguous concerning whether the exception applies to all late-filed petitions, or whether it is limited to late-filed petitions filed by persons who filed an earlier, timely petition.

■    When the text and context of the statute do not make the legislature's intention clear, we turn to the legislative history to aid us in construing the statute. *Boone v. Wright, supra*. The legislative history of ORS 138.510(2) is silent on the present question. The wording of the last clause in ORS

138.510(2) was borrowed verbatim from ORS 138.550(3), which limits the substantive grounds for relief claimed in a subsequent petition to those raised in an original or amended petition. The legislative committees involved did not discuss the appropriateness of that wording in this context.[5]

We next consider the purpose of the exception in ORS 138.510(2). *See McKean-Coffman v. Employment Div.*, 312 Or 543, 550, 824 P2d 410 (1992) (in addition to considering the wording and the legislative history of a statute, court considered its purpose). The purpose of the exception is to give persons extra time to file petitions for post-conviction relief in extraordinary circumstances. See discussion of purpose and scope of exception at 358-59, *post*. That purpose applies equally to persons who did and persons who did not file an earlier, timely petition. We hold that the exception in ORS 138.510(2) does not require the filing of a timely "original or amended" petition as a prerequisite to the filing of an untimely petition.

The next question is whether the ground for relief asserted by petitioner Bartz — the failure of his trial counsel to advise him of a possible statutory defense — is one that could not reasonably have been raised within 120 days after Bartz's conviction became final. ORS 138.510(2) does not explain precisely what kinds of circumstances fulfill the statutory requirement that an untimely petition assert a ground for relief that "could not reasonably have been raised" in a timely petition. We therefore examine the legislative history of that requirement.

The 1989 amendments to ORS 138.510 to 138.580 were intended to reduce the costs of the state's indigent defense programs. Minutes, House Committee on the Judiciary, Subcommittee on Civil and Judicial Administration, June 12, 1989, pp 9-11. Limiting the time within which convicted persons may file petitions for post-conviction relief was one of several cost-cutting methods proposed. *Id.* at p 9. During hearings on the amendments in the House Judiciary Subcommittee on Crime and Corrections, it was suggested

---

[5] Minutes, House Committee on the Judiciary, Subcommittee on Crime and Corrections, April 4, 1989, p 8; Minutes, House Committee on the Judiciary, Subcommittee on Civil and Judicial Administration, April 18, 1989, p 5, and June 12, 1989, pp 14-15.

that, if a time limitation were adopted, it contain an exception or "escape clause." Minutes, House Committee on the Judiciary, Subcommittee on Crime and Corrections, March 9, 1989, p 4.

Discussion of the scope of the "escape clause" took place in two subcommittees of the House Committee on the Judiciary.[6] In the Subcommittee on Crime and Corrections, a representative of the Justice Department noted the importance of such a provision in cases where evidence is newly discovered after the expiration of the limitation period. Minutes, Subcommittee on Crime and Corrections, March 9, 1989, p 4. A representative of the Oregon Criminal Defense Lawyers Association testified to the Subcommittee on Civil and Judicial Administration that he would support the 120-day time limitation if an exception were made where "extraordinary circumstances" were shown. As examples, he mentioned convictions procured by collusion between a prosecutor and a defense lawyer, but coming to light after the limitation period, and situations in which the statute under which the conviction was obtained is later declared facially unconstitutional. Minutes, House Committee on the Judiciary, Subcommittee on Civil and Judicial Administration, June 12, 1989, pp 13-14.[7]

In general, those examples involve information that did not exist or was not reasonably available to a defendant within the 120-day period following conviction. The legislative history thus suggests that the exception in ORS 138.510 (2) is meant to be construed narrowly.

■     Given the specific nature of Bartz's claim, the issue becomes whether the extant statutes pertaining to a particular criminal offense constitute information that is reasonably available to a defendant convicted of that offense. It is a basic assumption of the legal system that the ordinary means by

---

[6] There was no discussion of the exception during the later floor debates that took place before passage of the bill. Tape Recording, Senate Floor Debate, July 1, 1989, Tape 239, Side B; Tape Recording, House Floor Debate, June 30, 1989, Tape 236, Side 1.

[7] The witness suggested that the exception apply "only upon a showing of a manifest injustice" and that it be applied so as to "severely limit" the number of late petitions permitted to be filed. Tape recording, House Subcommittee on Civil and Judicial Administration, June 12, 1989, Tape 122, Side A.

which the legislature publishes and makes available its enactments are sufficient to inform persons of statutes that are relevant to them. *See Dungey v. Fairview Farms, Inc.*, 205 Or 615, 621, 290 P2d 181 (1955) (every person is presumed to know the law). Accordingly, we hold that the relevant statutes were reasonably available to Bartz when his conviction became final. The failure of Bartz's counsel to advise him of all available statutory defenses thus is not a "ground[] for relief * * * which could not reasonably have been raised" timely. ORS 138.510(2). The exception to the 120-day limitation period is not available to Bartz under the circumstances here.

### B. *Consistency with ORS 138.530(2).*

Petitioner Britain contends that ORS 138.510(2), the 120-day time limitation, conflicts with another provision of the PCHA, ORS 138.530(2). ORS 138.530(2) provides:

> "Whenever a person petitions for relief under ORS 138.510 to 138.680, ORS 138.510 to 138.680 shall not be construed to deny relief where such relief would have been available prior to May 26, 1959, under the writ of habeas corpus, nor shall it be construed to affect any powers of executive clemency or pardon provided by law."

In addressing the question of an alleged inconsistency between provisions of a statute, we again turn for guidance to the rules of statutory construction provided by the legislature. ORS 174.020 provides in part:

> "In the construction of a statute the intention of the legislature is to be pursued if possible."

ORS 174.010 provides in part:

> "[W]here there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."

*See also Circuit Court v. AFSCME*, 295 Or 542, 545, 669 P2d 314 (1983) (whenever possible, court construes statutes so as to achieve consistency); *Davis v. Wasco IED*, 286 Or 261, 272, 593 P2d 1152 (1979) (if possible, court construes statutes on same subject as in harmony with each other).

The intent of the legislature in enacting the PCHA was to provide a set of procedures to persons seeking post-

conviction relief on certain grounds. *Strong v. Gladden*, 225 Or 345, 348, 358 P2d 520 (1961). ORS 138.510(2) is one of those procedures. The legislature's purpose in including ORS 138.530(2) in the PCHA was explained — correctly, we believe — by the Court of Appeals in *Atkeson v. Cupp*, 68 Or App 196, 199, 680 P2d 722, *rev den* 297 Or 546 (1984):

> "[T]he purpose of [ORS 138.530(2)] is to ensure that post-conviction relief will be as broad as habeas corpus relief * * *. The *substance* of habeas corpus remains available to petitioners, although it is now called post-conviction relief so far as these specific claims are concerned." (Emphasis added.)

■　　Construing ORS 138.530(2) and ORS 138.510(2) so as to conform to the intent of the legislature and to give effect to both, we conclude that the former concerns the *substantive relief* intended by the legislature to be preserved in the enactment of the PCHA, while the latter establishes a *procedure* to be followed in obtaining that relief. That being so, the provisions cited by Britain are not inconsistent with each other.

### THE CONSTITUTIONALITY OF ORS 138.510(2)

As related above, petitioners raise one state constitutional claim and two federal constitutional claims. We analyze their state constitutional claim first. *See State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983) (courts should decide questions of state law before reaching federal constitutional issues).

### A.　*Article I, section 23, of the Oregon Constitution.*

We turn to the question whether the 120-day time limitation on filing petitions for post-conviction relief impermissibly suspends the writ of habeas corpus, in violation of Article I, section 23, of the Oregon Constitution. We begin with a brief examination of the background and principal features of the PCHA.

■　　The Constitution of the United States requires the states to provide persons convicted of crimes "some clearly defined method by which they may raise claims of denial of federal rights." *Young v. Ragen*, 337 US 235, 239, 69 S Ct 1073, 93 L Ed 1333 (1949), *cited in* Collins and Neil, *The Oregon Postconviction-Hearing Act*, 39 Or L Rev 337, 337 n 2

(1960). Before 1959, Oregon fulfilled that requirement with a complex and confusing array of post-conviction remedies, including writs of habeas corpus (as provided both in the Oregon Constitution and in statutes), writs of coram nobis, motions to correct the record, and motions to vacate the judgment. The PCHA was adopted in 1959 to provide a detailed, unitary procedure to persons seeking post-conviction relief. *Strong v. Gladden, supra,* 225 Or at 348; Collins and Neil, *supra,* 39 Or L Rev at 337-40.

The PCHA describes the forms of relief that may be granted. ORS 138.520. It sets out the substantive grounds for relief, ORS 138.530, among them a "substantial denial" of a petitioner's constitutional rights in the proceedings resulting in the conviction, so as to render that conviction void. ORS 138.530(1)(a); *Shipman v. Gladden,* 253 Or 192, 203, 453 P2d 921 (1969). The PCHA also imposes various conditions on the availability of relief. ORS 138.550. It provides detailed procedures for the filing and processing of petitions, ORS 138.560 to 138.660, including provisions for proceeding as an indigent person, ORS 138.590.

The PCHA abolishes all the common-law post-conviction remedies previously extant in Oregon, with the explicit exception of the writ of habeas corpus. ORS 138.540 (1); *State v. Threet,* 294 Or 1, 6 n 3, 653 P2d 960 (1982). The latter remedy is retained for convicted persons who "assert[] the illegality of [their] restraint" on grounds other than those establishing eligibility for PCHA procedures. ORS 138.540(2). In addition, ORS 138.530(2) provides that the PCHA "shall not be construed to deny relief where such relief would have been available prior to [1959] under the writ of habeas corpus." However, as provided in the statute governing habeas corpus, the PCHA is now the exclusive post-conviction vehicle for persons to challenge a criminal conviction on the substantive grounds set out in the PCHA. ORS 34.330(3).[8]

---

[8] ORS 34.330(3) provides:

"The following persons shall not be allowed to prosecute the writ:

"* * * * *

"(3) Except as provided in ORS 138.530, persons eligible to obtain post conviction relief pursuant to ORS 138.510 to 138.680."

The question before us is whether the 1989 amendment to ORS 138.510 to 138.680, which imposes a 120-day time limit on the filing of petitions for post-conviction relief, impermissibly suspends the writ of habeas corpus in violation of Article I, section 23, of the Oregon Constitution. This court has not previously ruled on that issue. In considering it, we may look for guidance to other jurisdictions in which similar issues have been raised.[9]

In an early constitutional challenge to the 1948 federal post-conviction hearing act, 28 USC § 2255, the Supreme Court of the United States declined to decide whether the statute violated Article I, section 9, clause 2, of the Constitution of the United States by impermissibly suspending the writ of habeas corpus, because the federal statute explicitly retained the right to proceed under the writ where the statutory procedure was shown to be "inadequate or ineffective to test the legality of the defendant's detention." *United States v. Hayman*, 342 US 205, 223, 72 S Ct 263, 96 L Ed 232 (1952). The Court found that "the sole purpose [of the Act] was to minimize the difficulties encountered in habeas

---

ORS 138.530(2) and (3) provide the exceptions apparently referred to in ORS 138.330(3):

"(2) Whenever a person petitions for relief under ORS 138.510 to 138.680, ORS 138.510 to 138.680 shall not be construed to deny relief where such relief would have been available prior to May 26, 1959, under the writ of habeas corpus, nor shall it be construed to affect any powers of executive clemency or pardon provided by law.

"(3) ORS 138.510 to 138.680 shall not be construed to limit the original jurisdiction of the Supreme Court in habeas corpus as provided in the Constitution of this state."

[9] As this court held in *State v. Kennedy*, 295 Or 260, 267, 666 P2d 1316 (1983):

"Lest there by any doubt about it, when this court cites [opinions from other jurisdictions] in interpreting a provision of Oregon law, it does so because it finds the views there expressed persuasive, not because it considers itself bound to do so by its understanding of [the doctrines expressed therein]." (Citations omitted.)

We are particularly likely to be assisted by opinions from those jurisdictions having constitutional provisions virtually identical to those at issue here. Article I, section 23, of the Oregon Constitution and Article I, section 9, clause 2, of the Constitution of the United States are virtually identical. See notes 2 and 3, *ante*, where we quote those provisions. An additional benefit is gained when cases from other jurisdictions provide insight into the origins and functions of the common constitutional language. *See State v. Kennedy, supra*, 295 Or at 267 (discussing when federal cases construing common constitutional clauses may be persuasive).

corpus hearings by affording [defendants] the same rights in another and more convenient forum." *Id.* at 219.

Citing *Hayman,* other courts have upheld post-conviction hearing acts, including the federal act, where the procedures provided were a reasonable substitute for the writ. *See, e.g., Stirone v. Markley,* 345 F2d 473, 475, *cert den* 382 US 829 (7th Cir 1965) (28 USC § 2255 is not an unconstitutional suspension of the writ of habeas corpus where statutory procedures relating to expeditious consideration of motions, entertainment of successive motions, and production of the prisoner are adequate substitutes for equivalent procedures under the writ).

In *Wiglesworth v. Wyrick,* 531 SW2d 713 (Mo 1976), the Missouri Supreme Court considered an attack on the constitutionality of a rule relating to post-conviction motions to vacate a sentence. That court held that

> "the suspension [of the writ of habeas corpus] prohibited [in Article I, section 12 of the state constitution] relates to denial of the substantive right to have judicial inquiry into the cause of and justification for allegedly illegal detention, not to the form and procedure utilized in such proceeding." *Id.* at 717.[10]

The Missouri court held that, where the substantive remedy is as broad as that provided under state or federal habeas corpus guarantees,

> "[t]he particular procedural requirements specified by a state for pursuing the substantive objective are for it to determine. If they are reasonable * * *, they do not constitute a suspension of the writ of habeas corpus." *Id.* at 720.[11]

■　　A similar analysis is appropriate to test the constitutionality of the limitation period in the PCHA. If the procedures provided by that act are a reasonable substitute for the writ of habeas corpus, they are constitutional.

■　　The institution of habeas corpus consists of the power of the courts to inquire into the legality of a detention.

---

[10] Article I, section 12, of the Missouri Constitution provides that "the privilege of the writ of habeas corpus shall never be suspended."

[11] We have already rejected petitioner Britain's claim that ORS 138.510(2) infringes on the substantive bases available for post-conviction relief. *See ante* at 360-61.

*See Fay v. Noia,* 372 US 391, 400-07, 83 S Ct 822, 9 L Ed 2d 837 (1963) (so explaining). It is that *system* of judicial inquiry that may not be suspended (interrupted or discontinued), except in cases of rebellion or invasion. Any legal system, including habeas corpus, requires procedures to implement it. So long as those procedures are not tantamount to a suspension of the system of habeas corpus — that is, so long as those procedures are reasonable for persons who seek redress — they do not offend the state constitutional ban on suspending habeas corpus.

In Oregon, the writ of habeas corpus is intended to allow a detained person the opportunity to inquire into the legality of that detention, with a view to an order releasing the petitioner. *Gibbs v. Gladden,* 227 Or 102, 105, 359 P2d 540, *cert den* 368 US 862 (1961); *Long v. Minto,* 81 Or 281, 284-85, 158 P 805 (1916). *See Fay v. Noia, supra,* 372 US at 399-414 (tracing the history and purpose of the writ of *habeas corpus ad subjiciendum* in Anglo-American jurisprudence). *See also* ORS 34.310 (writ of habeas corpus allows person who is "imprisoned or otherwise restrained of liberty * * * to inquire into the cause of such imprisonment or restraint, and if illegal, to be delivered therefrom"). Persons desiring that same opportunity, but asserting substantive grounds established in the PCHA, must utilize the procedures set out in that act. ORS 138.530. Those procedures are detailed and comprehensive. The fact that they include a time limitation on the filing of a petition for post-conviction relief does not necessarily prevent them from being a reasonable method for making the inquiry described above. In *United States v. Randolph,* 262 F2d 10 (7th Cir 1958), *cert den* 359 US 1004 (1959), the court, considering the claim of a federal habeas corpus petitioner who had failed timely to avail himself of state post-conviction relief, stated:

> "The law is well settled that a state may attach reasonable time limitations on the assertion of federal constitutional rights * * *." 262 F2d at 12.

Similarly, a reasonable time limitation may be placed on the assertion of a state constitutional claim. *Cf. Evans v. Finley,* 166 Or 227, 233, 111 P2d 833 (1941) ("Statutes of limitation * * * do not extinguish the right."). In other jurisdictions, that general principle has been applied to the

imposition of a time limit on the state constitutional right to seek post-conviction relief. *See People v. Germany*, 674 P2d 345 (Colo 1983) (state may impose reasonable restrictions on collateral challenges to allegedly unconstitutional convictions, so long as a "meaningful opportunity" to conduct that challenge is preserved); *Davis v. State*, 443 NW2d 707, 709 (Iowa 1989) (legislature may impose reasonable restrictions on exercise of state constitutional right to post-conviction relief so long as that right is not "materially impaired"). *See also Day v. State*, 770 SW2d 692, 695 (Mo), *cert den sub nom Walker v. Missouri*, 493 US 866 (1989) (90-day limitation on right to seek post-conviction relief is "valid" and "reasonable").

Under ORS 138.005 to 138.500, a person convicted of a crime in Oregon may appeal that conviction. The convicted person must serve and file the notice of appeal not later than 30 days after the judgment or order appealed from is entered in the register. ORS 138.071(1). By contrast, the PCHA gives the convicted person four times as long to review the circumstances of the conviction, consult with counsel, and consider whether a post-conviction claim is available, plus additional time to bring claims when the grounds for relief asserted could not reasonably have been raised within 120 days. ORS 138.510(2). The 120-day limit, when combined with the exception, provides a reasonable opportunity to seek post-conviction relief. We do *not* hold that any time limit, no matter how short, would be permissible in this context, but we do hold that the 120-day period of limitation in ORS 138.510(2), which incorporates an exception in certain circumstances, does not prevent the available procedure from being reasonable for persons who seek redress. ORS 138.510 (2) does not violate Article I, section 23, of the Oregon Constitution.

B. *Article I, section 9, clause 2, of the Constitution of the United States.*

Petitioner Bartz asserts that ORS 138.510(2) is unconstitutional under Article I, section 9, clause 2, of the federal constitution, as well as under Article I, section 23, of the Oregon Constitution. He makes no separate argument to support that assertion, however.

The federal cases, discussed above, establish that a time limit in a statutory post-conviction procedure to test the legality of a detention must be reasonable. *United States v. Randolph, supra,* 262 F2d at 12. For the reasons stated in the preceding section, ORS 138.510(2) meets that criterion. ORS 138.510(2) does not violate Article I, section 9, clause 2, of the Constitution of the United States.

C. *Federal Due Process.*

1. *Time Limit.*

Petitioner Bartz also asserts that the imposition of a 120-day limit on his right to file a petition for post-conviction relief violates his right under the Fourteenth Amendment to the Constitution of the United States not to be deprived of liberty without due process of law. We turn now to that assertion.

The due process clause of the Fourteenth Amendment protects the rights of a defendant who is charged with a crime in a state court. *State v. Delaney,* 221 Or 620, 638, 332 P2d 71, 351 P2d 85; *see also State v. Turner,* 253 Or 235, 238, 453 Or 910 (1969) ("When liberty is at issue, due process of law must be satisfied"). Some procedural rights of criminal defendants and convicted persons are derived from their nature as procedures that are fundamental within the context of a criminal proceeding. *See Duncan v. Louisiana,* 391 US 145, 149, 158, 88 S Ct 1444, 20 L Ed 2d 491 (1968) (test for whether the Fourteenth Amendment guarantees a right is whether the right is "fundamental to the American scheme of justice" and "essential for preventing miscarriages of justice"); *see also State v. Gann,* 254 Or 549, 561-62, 463 P2d 570 (1969) (due process requires the use of procedures that are so fundamental that their absence impairs or discredits the criminal proceeding); *McWilliams v. Gladden,* 242 Or 333, 345, 407 P2d 833 (1966) (purpose behind constitutional requirement of due process is to prevent a conviction by methods that are inconsistent with the American theory of fair play). Examples include the right to have the state carry the burden of proof regarding all essential elements of an offense, *Mullaney v. Wilbur,* 421 US 684, 95 S Ct 1881, 44 L Ed 2d 508 (1975), and the right to have guilt proved beyond a

reasonable doubt, *In re Winship*, 397 US 358, 90 S Ct 1068, 25 L Ed 2d 368 (1970).

■    We apply the test stated in *Duncan v. Louisiana, supra,* to the right claimed by petitioner Bartz here. In doing so, we ask whether the right to have more than 120 days in which to file a petition for post-conviction relief, or the right to have a broader exception to the 120-day limit, is a right that is a fundamental one, "essential for preventing miscarriages of justice." *Duncan v. Louisiana, supra,* 391 US at 158. We think not.

As noted above, a person convicted of a crime in Oregon has 30 days within which to appeal that conviction. ORS 138.071(1). By contrast, the provision challenged by petitioner, ORS 138.510(2), grants the convicted person four times as long to review the circumstances of the conviction, consult with counsel, and take other steps toward deciding whether to file a petition for post-conviction relief. In addition, an exception permits the late filing of a petition when the court "finds grounds for relief asserted which could not reasonably have been raised" timely. ORS 138.510(2).

■    Due process — that is, the use of procedures that are fundamentally fair and essential for preventing miscarriages of justice — does not preclude a state from attaching a reasonable time limitation to the assertion of constitutional claims. *Michel v. Louisiana*, 350 US 91, 97, 76 S Ct 158, 100 L Ed 83 (1955). The choice of a particular time limitation is always arbitrary to some degree. Due process requires only that the time limitation be reasonable. The 120-day limitation in ORS 138.510(2), coupled with the exception for the late filing of a petition when the court finds that the ground for relief asserted could not reasonably have been raised within 120 days, provides a reasonable opportunity for convicted persons to consider what theories of post-conviction relief may be available to them and to assert those theories. We find nothing fundamentally unfair about ORS 138.510 (2); no additional procedure is essential for preventing miscarriages of justice.

2.    *Personal Notice.*

Petitioner Bartz's final argument is that ORS 138.510(2) violates the Fourteenth Amendment right to due

process of law, because its procedures do not include a provision for giving personal notice to convicted persons of their right to file a petition for post-conviction relief.

As stated above, the test under the due process clause for a criminal procedure is whether it is fundamentally fair or whether a different procedure is essential to prevent miscarriages of justice. *Duncan v. Louisiana, supra,* 391 US at 158. Again, we ask whether the right claimed here — the right to be informed personally about a statutory procedure for post-conviction relief — is a fundamental one, essential to prevent miscarriages of justice. As in the case of the time limitation, we think not.

We said in a different context, earlier in this opinion, that it is a basic assumption of the legal system that the ordinary means by which the legislature publishes and makes available its enactments is sufficient to inform persons of statutes that are relevant to them. The absence of a requirement in the PCHA that a court personally and specifically inform a convicted person of the availability and terms of post-conviction relief does not render that statute fundamentally unfair. Personal notice is not essential to prevent miscarriages of justice.

To summarize, ORS 138.510(2) does not violate the due process clause of the Fourteenth Amendment of the Constitution of the United States for either of the reasons advanced by petitioner Bartz.

## CONCLUSION

The exception to the 120-day limit in ORS 138.510(2) does not apply to petitioner Bartz. ORS 138.510(2) is not inconsistent with ORS 138.530(2), as argued by petitioner Britain. ORS 138.510(2) does not violate Article I, section 23, of the Oregon Constitution; Article I, section 9, clause 2, of the Constitution of the United States; or the due process clause of the Fourteenth Amendment.

The decisions of the Court of Appeals and the judgments of the circuit courts are affirmed.