BALMER, J., dissenting.
Statutes of limitations, by their nature, can block good claims. In criminal law, they may protect the guilty. In the tort system, they may deprive the injured of a remedy. And in post-conviction proceedings, they can deny relief from constitutionally unsound convictions.
Why accept that? Because statutes of limitations also play an important, and sometimes essential, role in our legal system. They press parties to bring their claims in a timely matter, they prevent disputes from being adjudicated long after the most probative evidence has gone stale, and they provide certainty to potential defendants who once the statute of limitations has run can live their lives without the fear that they will be subject to a lawsuit or to criminal charges. In the post-conviction context, a statute of limitations may provide crime victims with assurance that the criminal justice system has finally reached a definitive conclusion. A statute of limitations may also make it more likely that post-conviction claims are brought in a timeframe **521 where, if a conviction is set aside, it still may be practicable for the state to retry the petitioner, should doing so be in the interests of justice. Yet those advantages *739 come at an unavoidable cost: Any statute of limitations will necessarily, but hopefully rarely, block some good claims.
The legislature recognized this essential fact about statutes of limitations when drafting Oregon's system of post-conviction review, and for that reason initially declined to include one. Jack G. Collins & Carl R. Neil, The Oregon Postconviction Hearing Act , 39 Or. L. Rev. 337, 361 (1960) ("A layman convicted of a crime may be unaware of legal remedies for procedural defects in his conviction until the limited time has expired."). In 1989, however, the legislature reevaluated the costs and benefits of statutes of limitations and added a statute of limitations to post-conviction proceedings. Or. Laws 1989, ch. 1053, § 18. Although the legislature limited the time within which a post-conviction claim must be brought, it also included an "escape clause," defining circumstances where the statute of limitations would not apply. In Bartz v. State of Oregon , 314 Or. 353, 839 P.2d 217 (1992), this court held that the escape clause contained in ORS 138.510(3) was narrow, and that it did not include claims that were untimely filed because of a petitioner's ignorance of the law relevant to the claim. Now, the majority interprets ORS 138.510(3) to, in effect, carve out a new exception to Bartz -a petitioner's ignorance of immigration consequences of his or her conviction can be a basis for invoking the escape clause. I sympathize with the majority's effort to provide a path to relief for petitioner, who faces harsh immigration consequences that he did not anticipate when he made the decision to plead guilty. But the distinction that the majority draws between petitioner's claim and that of any other post-conviction petitioner who was unaware of the law pertaining to his or her challenge has no basis in the text, context, or legislative history of the escape clause. The best reading of the escape clause, considering both its text and the legislature's intent, is that it does not provide relief in this case, where petitioner's only reason for his late filing was ignorance of the law. Therefore, I respectfully dissent.
**522 Petitioner is an immigrant who pleaded guilty to the crime of sex abuse in the third degree, ORS 163.315. In his petition, he alleged that this conviction makes him deportable and that his attorney failed to inform him of this fact before he pleaded guilty to the offense. That allegation, if true, would likely entitle petitioner to relief under Padilla v. Kentucky , 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), which held that criminal defense attorneys must inform immigrant clients of the immigration consequences of a conviction.
Although petitioner appears to have a meritorious claim, there is a roadblock, the statute of limitations. ORS 138.510(3) states that "[a] petition [for post-conviction relief] must be filed within two years of the following, unless the court on hearing a subsequent petition finds grounds for relief asserted which could not reasonably have been raised in the original or amended petition" (emphasis added), and then sets out the date on which the limitations period begins to run in several different circumstances. There is no dispute that petitioner did not file his petition within two years of the required date-in his case, the date that his conviction was entered in the record. Therefore, his petition must be dismissed, whatever its merits, unless his "grounds for relief asserted *** could not reasonably have been raised in the original or amended petition." Id.
Petitioner does not dispute that he knew most facts relevant to his claim. He knew that he had entered a plea to the crime of sex abuse in the third degree, and he knew the matters that his trial lawyer had informed him about before he entered that plea-and that they did not include possible immigration consequences of his plea. He knew, or at least he now alleges, that he would not have pleaded guilty to a crime that made him deportable. He alleges neither that he was unaware of Padilla v. Kentucky , the principal case that his claim for relief relies upon, nor that he was unaware that criminal convictions, as a general matter, might have immigration consequences. He states, however, that he did not learn that his specific conviction could make him deportable until after the statute of limitations had run. That piece of legal information is the only thing that petitioner states that he did not know *740 during the statute of limitations **523 period.[1] Is ignorance of that point of law, and nothing else, sufficient to support a finding that his grounds for relief "could not reasonably have been raised" within two years of his conviction? ORS 138.510(3).
This court has addressed that question before. In Bartz , 314 Or. 353, 839 P.2d 217, a post-conviction petitioner alleged that his trial counsel had been inadequate because he had failed to inform the petitioner of a possible defense before the petitioner entered a guilty plea.[2] The petitioner, Bartz, argued that because he was unaware of the existence of the defense until after the statute of limitations had run and was therefore unable to bring his inadequate assistance of counsel claim earlier, the escape clause should apply to his claim. Id . This court examined the legislative history of ORS 138.510(3) and concluded that the legislature intended the escape clause "to be construed narrowly." Bartz , 314 Or. at 359, 839 P.2d 217. Consistent with that understanding, the court framed the question as "whether the extant statutes pertaining to a particular criminal offense constitute information that is reasonably available to a defendant convicted of that offense." Id . The court then answered that question in the affirmative:
"It is a basic assumption of the legal system that the ordinary means by which the legislature publishes and makes available its enactments are sufficient to inform persons of statutes that are relevant to them. Accordingly, we hold that the relevant statutes were reasonably available to Bartz when his conviction became final."
Id. at 359-60, 839 P.2d 217 (internal citation removed).
**524 In this case, petitioner had all the information needed to raise an ineffective assistance of counsel claim in a petition for post-conviction review, except for the legal effect of his conviction on his immigration status. If the relevant law was available to him, as Bartz held, this is an easy case: Petitioner either had or reasonably could have had all the information necessary to file a petition for post-conviction review within two years of his conviction, and thus reasonably could have done so.
The majority's resolution of this case, and its break from Bartz , rests on two new conclusions about the escape clause. The majority holds that "the subject of the reasonableness inquiry in ORS 138.510(3) is an unrepresented petitioner, rather than counsel ***." 364 Or. at 520, 435 P.3d at 738. Second, the majority draws a distinction between the availability of the law to a petitioner and that petitioner's motivation to consult the law, holding that "a ground for relief is reasonably available only if there was a reason for the petitioner to look for it." 364 Or. at 511, 435 P.3d at 733. The majority then holds that this case differs from Bartz in that the petitioner was unaware of any "need to investigate," 364 Or. at 512, 435 P.3d at 734, because "until he was detained by ICE after the limitations period had run, he was unaware that his counsel had caused him harm that might arise in the future," 364 Or. at 513, 435 P.3d at 734. Both conclusions are incorrect.
I begin with the question of whether the legal ignorance of a previously unrepresented petitioner is sufficient to allow invocation of the escape clause. The text of the escape clause refers to "grounds for relief asserted which could not reasonably have been raised in the original or amended petition." ORS 138.510(3). As we recognized in Bartz , that *741 text, standing on its own, is ambiguous. Bartz , 314 Or. at 357, 839 P.2d 217 (" ORS 138.510(2) does not explain precisely what kinds of circumstances fulfill the statutory requirement that an untimely petition assert a ground for relief that 'could not reasonably have been raised' in a timely petition."). The context, however, substantially clarifies its meaning.
When it was added, the text of the escape clause mirrored that found in two existing provisions of Oregon post-conviction law. ORS 138.550(2) bars petitioners who have **525 obtained "direct appellate review" of their conviction from raising any ground in their petition "unless such ground was not asserted and could not reasonably have been asserted in the direct appellate review proceeding." And petitioners who have already filed one petition for post-conviction review are barred from filing another by ORS 138.550(3), "unless the court finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition." Both of those provisions-the direct review escape clause and the successive petitions escape clause-have been present in Oregon law since 1959. Or. Laws 1959, ch. 636, § 15(3).[3]
As a general presumption, when the legislature uses the same text in multiple places within the same set of statutes, that text should be given the same meaning throughout. State v. Shaw , 338 Or. 586, 603, 113 P.3d 898 (2005). Here, the legislature used existing text to define a new exception. The most reasonable inference is that the legislature wanted that text to have the same meaning, not a wholly different application.
In the context of the original act, ORS 138.550(2) and (3) served an important purpose: codifying res judicata , or claim preclusion, principles. See Bogle v. State of Oregon , 363 Or. 455, 467, 423 P.3d 715 (2018) (" ORS 138.550(3) is one of the res judicata provisions of the PCHA."); Freeman v. Gladden , 236 Or. 137, 139, 387 P.2d 360 (1963) ("[ ORS 138.550(2) ] was intended to state the principle of res judicata in post-conviction appeals."). We have previously recognized that
"The res judicata provisions were among 'the most important [provisions of] the act.' They were intended to 'provide a clear and workable basis for reducing the tide of postconviction litigation to manageable proportions, while maintaining standards of fairness.' "
**526 Bogle , 363 Or. at 467, 423 P.3d 715 (quoting Collins & Neil, 39 Or. L. Rev. at 356) (alteration in Bogle ; citations omitted). Those provisions were a response to a significant problem:
"It is well known that a few 'prisoner-lawyers' have taken advantage of inadequate res judicata doctrines applicable in postconviction cases to flood the courts with petition after petition, each raising a different ground of attack on their convictions."
Collins & Neil, 39 Or. L. Rev. at 356. In line with that restrictive purpose, the exception to the res judicata provisions for grounds that "could not reasonably have been raised" was not intended to be particularly broad, or to undermine the restrictions themselves.
The label of res judicata , the structure of those provisions, and the commentary to them indicate that the provisions operated to require that claims must be brought at the first available proceeding, regardless of whether the law was known to the petitioner and his or her attorney. But what if an unrepresented petitioner failed to bring the claim in an earlier proceeding because of legal ignorance? The structure of the res judicata provisions makes clear that that was not a basis for invoking their escape clauses. ORS 138.550(2) contains res judicata provisions applicable when there had already been a direct appeal as well as the direct appeal escape clause. However, the drafters understood *742 that not all petitioners would have had access to counsel on direct appeal and felt "that a layman cannot fairly be held responsible for failure to proceed and raise legal issues when he is without legal assistance." Collins & Neil, 39 Or. L. Rev. at 357. The legislature did not understand the direct appeal escape clause to solve that problem. To protect unrepresented petitioners, the legislature added a second exception: The direct appeal res judicata provisions do not apply "[i]f petitioner was not represented by counsel in the direct appellate review proceeding, due to his lack of funds to retain such counsel and the failure of the court to appoint counsel for that proceeding." ORS 138.550(2). Because the second exception was necessary to avoid barring claims that had not been raised because of legal ignorance, the legislature clearly did not understand the escape clause, standing alone, to forgive an unrepresented nonlawyer's ignorance of **527 the law. If the direct appeal escape clause allowed petitioners to bring claims that they would have raised on appeal but for their legal ignorance, the second exception would be redundant.
In addition, "[c]ourt decisions that existed at the time that the legislature enacted a statute-and that, as a result, it could have been aware of-may be consulted in determining what the legislature intended in enacting the law as part of the context for the legislature's decision." OR-OSHA v. CBI Services, Inc ., 356 Or. 577, 593, 341 P.3d 701 (2014). Shortly before the legislature enacted the post-conviction statute of limitations, the Court of Appeals held that the successive petitions escape clause, contained in ORS 138.550(3), operated on a presumption that postconviction petitioners knew the law. The issue came up in the case of a petitioner who claimed that he had grounds that he "could not reasonably have been raised in the earlier [post-conviction] proceeding, because his counsel in that proceeding was ineffective." Page v. Cupp , 78 Or. App. 520, 524, 717 P.2d 1183 (1986). When a post-conviction petitioner wished to raise a claim that counsel did not, this court had outlined procedures, in Church v. Gladden , 244 Or. 308, 417 P.2d 993 (1966), for raising the claim in the first postconviction hearing and held that the petitioner could not save the claim for a subsequent post-conviction petition. But Church had concerned grounds that the petitioner had tried to raise, and therefore of which the petitioner was necessarily aware. In Page , the petitioner claimed that he could not have raised the grounds in the first hearing because his counsel was ineffective, although he conceded that "the factual basis underlying his * * * claims for relief was revealed during his first post-conviction proceeding." Page , 78 Or. App. at 525, 717 P.2d 1183. There, as here, the question was whether petitioner's own legal ignorance and understandable reliance on counsel could excuse a failure to bring claims under the escape clause. The Court of Appeals held that ORS 138.550(3), in combination with Church , "presumes that the petitioner has knowledge of all grounds for relief that were, or should have been, discovered before the close of the original proceeding" and affirmed the dismissal of his petition. Page , 78 Or. App. at 525, 717 P.2d 1183 (emphasis added).
**528 As outlined above, the escape clauses in the res judicata provisions were understood to be narrow and could not be invoked based on legal ignorance. Because the legislature copied the escape clause from the existing res judicata provisions, it is appropriate to infer that the legislature wanted it to operate in the same way. If the legislature had wished to create a different or more generous exception, one that would forgive the legal ignorance of the typical petitioner, it surely would have used different words. And, as the majority describes, the legislative history supports the conclusion that the legislature wanted the statute of limitations escape clause to mirror the res judicata provision in ORS 138.510(3). 364 Or. at 518, 435 P.3d at 737.
Having reviewed that history, I have no difficulty in concluding that Bartz was correctly decided and that a ground could "reasonably have been raised" during the statute of limitations period if the petitioner was aware of all necessary facts, but unaware of a point of law relevant to his claim.[4] The legislature *743 adopted the escape clause with full knowledge that it was a res judicata provision that had previously been interpreted not to excuse legal ignorance. That rule resolves this case against petitioner.
As the majority recognizes, allowing the escape clause to be invoked based on a claim of legal ignorance "would allow the exception to swallow the rule," 364 Or. at 514, 435 P.3d at 735. Yet the majority nevertheless holds that the escape clause "requires assessing both whether the petitioner reasonably could have accessed the ground for relief and whether a reasonable person in the petitioner's situation would have thought to investigate the existence of that ground for relief." 364 Or. at 512, 435 P.3d at 734.
That approach was raised and rejected in Bartz , where the petitioner argued that,
"If an innocent criminal defendant takes his case to trial and is convicted, he knows something went wrong. He will be prompted to dig for the reasons of what went wrong and **529 how he can undo that wrong immediately following the conviction. A person, like the petitioner, who is convicted based upon a plea of guilty pursuant to plea negotiations upon the advice of trial counsel, would not similarly know something went wrong."
Petition for Review at 6-7, Bartz , 314 Or. 353, 839 P.2d 217 (emphasis in original). This court clearly understood what it wrote in Bartz to be responsive to that argument, and it is not hard to see why. Because the grounds of relief were available to Bartz, they could reasonably have been raised during the statute of limitations period, even if he was not particularly motivated to overturn his conviction until later. The majority agrees that Bartz reached the correct result even under its new formulation of the test:
"For the petitioner in Bartz , the conviction itself put him on notice of the need to investigate the existence of a ground for relief. He was, of course, aware of that conviction at the time it occurred. It was, therefore, incumbent on the petitioner to look for legal challenges to his conviction."
364 Or. at 512, 435 P.3d at 734. The majority also suggests that other, similarly "unexceptional" facts should be treated the same way. 364 Or. at 514, 435 P.3d at 735.
The majority thus faces the difficult task of distinguishing Bartz from this case. Bartz , like this case, involved as "grounds for relief," a claim of ineffective assistance of counsel.[5] That claim has two prongs. A petitioner "must show that counsel's representation 'fell below an objective standard of reasonableness' and that he was prejudiced as a result." Lee v. United States , --- U.S. ----, 137 S.Ct. 1958, 1964, 198 L.Ed.2d 476 (2017) (quoting Strickland v. Washington , 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ). In many ineffective assistance of counsel cases, particularly those involving a decision to plead guilty, the deficient performance takes the form of counsel providing a defendant with erroneous advice, or of counsel failing to provide a defendant with the advice that a reasonable attorney would have provided. In cases where the petitioner entered a **530 plea, a category that includes both Bartz and this case, prejudice may be shown by demonstrating a " 'reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial.' " Lee , --- U.S. ----, 137 S.Ct. at 1965 (quoting Hill v. Lockhart , 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) ).
In Bartz , the petitioner alleged that his lawyer had performed deficiently by failing to inform him that he had a viable defense to third-degree rape, the charge to which he ultimately entered a guilty plea. In this case, petitioner alleges that counsel performed deficiently by failing to inform him that the crime to which he entered a guilty plea might have immigration consequences. In both cases, the petitioners claimed prejudice, in that they would not have entered the plea if they had received the required advice. The *744 claims made in each case are structurally identical. They differ only in the type of advice that the attorney failed to provide. The basis for petitioner's claim is not the immigration consequences themselves, but his lawyer's failure to advise him concerning immigration consequences. Equally, his challenge is, like Bartz's, to his conviction, not to the immigration consequences that it may trigger under federal law.
The majority attempts to distinguish the two situations as follows:
"Whereas the petitioner in Bartz was aware of his conviction and could have either researched whether his trial counsel was ineffective, or sought help from an attorney to make that determination, petitioner in this case did not know about the immigration consequences that form the basis for his claim until he was later detained by ICE."
364 Or. at 514, 435 P.3d at 735. Yet the majority reaches different answers only by asking different questions. Was Bartz aware of his conviction? Of course, but petitioner also was aware of his conviction. Did petitioner know of the immigration consequences that form the basis for his claim?[6] No, but neither **531 was Bartz aware of the neglected defense that formed the basis of his claim. The real question, to which the majority does not supply an answer, is why the two cases should be analyzed differently. The result is an unexplained holding that Bartz's awareness of his conviction made it "incumbent on [him] to look for legal challenges to his conviction," 364 Or. at 512, 435 P.3d at 734, including ineffective assistance of counsel, yet that in this case petitioner had "no reason to look for [ineffective assistance of counsel] before being detained by ICE," 364 Or. at 513, 435 P.3d at 734.
As a result, the only fact that the majority points to that distinguishes this case from Bartz , and from most other untimely post-conviction claims, is that petitioner's claim was based on his lawyer's failure to advise him on immigration consequences . The majority suggests that its holding is limited to those facts:
"[P]etitioners who were unaware of the immigration consequences of their convictions are a narrow class of petitioners. Allowing petitioner's claim in this case to fall within the escape clause does not run the risk of having the escape clause swallow the statute of limitations."
364 Or. at 514, 435 P.3d at 735. That focus may narrow a rule that the majority recognizes would otherwise be too broad, but the majority points to nothing in the text, context, or legislative history of the escape clause that suggests an intent to treat that class of petitioners differently from all the others.
Although it is not explained that way, the majority's distinction between this case and Bartz may be better understood as rooted in fundamentally practical concerns. As the Supreme Court has observed,
"The nature of relief secured by a successful collateral challenge to a guilty plea-an opportunity to withdraw the plea and proceed to trial-imposes its own significant limiting **532 principle: Those who collaterally attack their guilty pleas lose the benefit of the bargain obtained as a result of the plea. Thus, a different calculus informs whether it is wise to challenge a guilty plea in a habeas proceeding because, ultimately, the challenge may result in a less favorable outcome for the defendant, whereas a collateral challenge to a conviction obtained after a jury trial has no similar down-side potential."
Padilla , 559 U.S. at 372-73, 130 S.Ct. 1473 (emphasis in original). As Padilla recognized, that difference between challenges to guilty *745 pleas and challenges to convictions after trial would likely reduce the number of challenges under its new rule. In that sense, the majority is likely correct in observing that "[petitioner] had no reason to look for [his claim] before being detained by ICE." 364 Or. at 513, 435 P.3d at 734. But that is equally true in most ineffective assistance of counsel cases involving guilty pleas. A petitioner is likely to view her plea, and the underlying plea bargain, as something other than an injury-and perhaps to see it as a boon, given the alternatives-and thus will have no reason to seek to challenge it until she discovers that the advice that informed her decision to enter the plea was incorrect or incomplete. But there is no special connection between that fact and unforeseen immigration consequences. There are many reasons why an individual might come to regret a guilty plea and seek to undo it-an unknown defense, an overlooked motion to suppress, an obscure constitutional challenge to the law-so an exception to the statute of limitations crafted to accommodate this concern would have to either be very broad or very arbitrary.[7]
Another practical dimension to this case is the ease of locating and discerning the point of law of which the petitioner was unaware. For an individual looking to challenge a criminal conviction, the elements of the crime and the available defenses are an intuitive place to begin the search-and, in Bartz , such an investigation would have **533 sufficed to uncover the attorney's error. The immigration consequences of petitioner's conviction might be less intuitive or more complex. But, again, there is nothing unique about immigration consequences in this regard. Many of the other topics on which a constitutionally deficient attorney could have failed to provide advice are no less obscure to the nonlawyer than immigration consequences-merger rules, search and seizure law, hearsay exceptions-and criminal cases with some frequency turn on aspects of the law that are removed from quotidian criminal practice, such as free speech rights or property law. There is no principled or workable basis on which to distinguish advice about immigration consequences from all other types of advice-and the majority does not offer one. The majority's exception will thus prove to be very broad or very arbitrary.
Of course, the legislature is entitled to carve out exceptions to the statute of limitations that are broad, seemingly arbitrary, or both. But the legislature intended to create neither a broad exception to the statute of limitations in ORS 138.510(3) for all types of legal ignorance nor a special exception for claims with some connection to immigration consequences. The majority agrees that the former exception would be contrary to the legislature's intentions and points to nothing to suggest that the legislature intended the latter exception. The majority's rule is, in essence, a judicial creation. In articulating the common law or constitutional requirements we may have a freer hand, but since 1959 the post-conviction process has been statutorily defined, and our role is to interpret what the legislature has written. See Dillard v. Premo , 362 Or. 41, 48-49, 403 P.3d 746 (2017) (Balmer, C. J., dissenting).
Strict statutes of limitations have their advantages, but their price is that they occasionally produce harsh results and unfairness. Even a claim that, as far as I can tell at this stage, is meritorious, and would likely have succeeded had it been filed a year earlier, must be dismissed. It may be the case that the escape clause, which has not been amended since Padilla was decided, should be modified to be more for-giving of immigration-related claims like petitioner's. The legislature is entitled to engage in the delicate balancing of competing policy objectives as is necessary in crafting any **534 statute of limitations. Here, they did so, and I cannot give their words any fair reading other than that outlined above. For those reasons, I *746 would affirm the judgment below, and therefore I respectfully dissent.
Kistler, S. J., joins in this dissent.

Petitioner also states that he did not know that there was a two-year statute of limitations on postconviction relief in Oregon, but he does not argue that that ignorance is relevant to whether his claim falls within the escape clause.

Bartz had been charged with two counts of third-degree and one count of first-degree rape. ORS 163.355 ; ORS 163.375. The defense in question was that:
"In any prosecution under ORS 163.355, ORS 163.365, ORS 163.385 or ORS 163.395 in which the victim's lack of consent was due solely to incapacity to consent by reason of being less than a specified age, it is a defense that the actor was less than three years older than the victim at the time of the alleged offense."
Bartz v. State , 110 Or. App. 614, 617 n. 2, 825 P.2d 657, aff'd , 314 Or. 353, 839 P.2d 217 (1992) (quoting ORS 163.345 ). Bartz did not claim that he was unaware of any fact relevant to this defense, only of its existence. Id .

It is impossible to understand the statute of limitations escape clause without recognizing this fact, because the escape clause contains a puzzling reference to "the original or amended petition." ORS 138.510(3). We have previously recognized that that was a drafting error, and that the legislature did not mean for the statute of limitations to apply only to situations in which a previous petition had been filed. Verduzco v. State , 357 Or. 553, 564, 355 P.3d 902 (2015) ; Bartz , 314 Or. at 358, 839 P.2d 217. The existence of that error further confirms the derivation of the escape clause text in ORS 138.510(3).

I would leave for another day the question of how the escape clause would apply in an extraordinary circumstance where the petitioner was denied access to the laws, or where the state's actions were responsible for petitioner's ignorance. No such circumstances are alleged here.

Ineffective or inadequate assistance of counsel is a claim under both state and federal constitutions, and in most respects is analyzed similarly under each. Petitioner's claim, however, is made only under the United States Constitution.

It would be more accurate to say that the lack of advice concerning immigration consequences forms the basis of petitioner's claim. Petitioner's actual immigration status is only somewhat related to his post-conviction claim. Petitioner may be deportable for reasons besides this conviction; conversely, he may have valid defenses against removal irrespective of this conviction. Moreover, the true immigration consequences of his conviction may turn on law that trial counsel was not constitutionally required to advise him on, or on changes in the law subsequent to his conviction, among several possible scenarios. See Esquivel-Quintana v. Sessions , --- U.S. ----, 137 S.Ct. 1562, 198 L.Ed.2d 22 (2017) (limiting the immigration consequences of state statutory rape offenses that do not require the victim to be under 16).

There is also no necessary connection between the reasons that an individual might wish to overturn a conviction and the legal basis for doing so. In this case, the two are apparently aligned, but that will not be so in all cases. For example, a petitioner might wish to undo her plea principally because of the deleterious effect that her conviction has upon her employment opportunities, but raise as grounds for relief that her trial counsel was ineffective for failing to uncover exculpatory evidence.