Argued and submitted November 5, 1991, orders of the Court of Appeals dismissing the petitions for judicial review vacated and cases remanded to Board of Parole for further proceedings May 21, 1992

MICHAEL JENKINS,
*Petitioner on Review,*

*v.*

BOARD OF PAROLE,
*Respondent on Review.*

(CA A65131; SC S38298 (Control))

MARVIN PEEK,
*Petitioner on Review,*

*v.*

BOARD OF PAROLE,
*Respondent on Review.*

(CA A64290; SC S38299)

DONALD EDWARD CORNELL,
*Petitioner on Review,*

*v.*

BOARD OF PAROLE,
*Respondent on Review.*

(CA A65193; SC S38300)

JOHANNES RICHARD JENSEN,
*Petitioner on Review,*

*v.*

BOARD OF PAROLE,
*Respondent on Review.*

(CA A64406; SC S38301)

ROBERT MARTIN FANCHER,
*Petitioner on Review,*

*v.*

BOARD OF PAROLE,
*Respondent on Review.*

(CA A65345; SC S38302)

ROGER D. HALL,
*Petitioner on Review,*

*v.*

BOARD OF PAROLE,
*Respondent on Review.*

(CA A64786; SC S38303)
(Cases Consolidated for Argument and Opinion)

833 P2d 1268

David K. Allen, Deputy Public Defender, Salem, argued the cause for petitioners on review. Lawrence J. Hall, Deputy Public Defender, filed the petition. With him on the petition was Sally L. Avera, Public Defender, Salem.

Michael D. Reynolds, Assistant Solicitor General, Salem, argued the cause for respondent on review. With him on the response to the petitions were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

GRABER, J.

## GRABER, J.

These consolidated cases present common questions. In each case, the petitioner was convicted of one or more crimes and became an inmate at a correctional facility. ORS 144.120(1) requires the Board of Parole (Board) to set the initial date of release on parole for each inmate within six months of that inmate's admission. After an initial parole release date was set for each petitioner, each sought judicial review of the Board's order setting the release date, without first having sought administrative review. The Court of Appeals dismissed each petition for judicial review on the ground that the court lacked jurisdiction, because the petitioner had failed to exhaust administrative remedies before seeking appellate court review. We vacate the orders of dismissal and remand the cases to the Board of Parole.

■ In 1989, the legislature amended ORS 144.335, the statute that governs judicial review of the Board's orders. Before the 1989 amendment, ORS 144.335 contained no requirement that an inmate exhaust administrative remedies before seeking judicial review of a Board order. The Board's rules that were in effect before the 1989 amendment did, however, provide a procedure for administrative review. *See* OAR 255-80-005 (1989) (establishing a procedure for requesting review); OAR 255-80-010 (1989) (stating the Board's criteria for granting administrative review); OAR 255-80-015 (1989) (describing the administrative review hearing packet).[1]

Under the law before the 1989 amendment to ORS 144.335, the time within which to file a petition for judicial review was 60 days from either of two events: the date of the original Board order or, if an inmate requested *and was granted* administrative review, the date on which the order on administrative review issued (whether or not relief was given). *Esperum v. Board of Parole*, 296 Or 789, 795-98, 681 P2d 1128, *on rehearing* 297 Or 222, 681 P2d 792 (1984). An inmate who sought administrative review was faced with a dilemma, because seeking administrative review did not stay

---

[1] The Board's rules concerning administrative review were first adopted in 1979 and were revised from time to time thereafter. For the purpose of this opinion, the pertinent version was the one in effect when the legislature acted in 1989; that is the version cited in the text above.

the 60-day time limit for seeking judicial review. If the Board denied the request for administrative review after the 60-day period, an inmate who had not filed a petition for judicial review was unable to obtain judicial review of either the original order or the order denying administrative review, because the latter was not an appealable order.

The Legislative Assembly amended ORS 144.335(1) by Oregon Laws 1989, chapter 790, section 41. That chapter contained an emergency clause, section 136, which made the amendment effective on July 25, 1989. ORS 144.335 now provides in part:

"(1) When a person over whom the board exercises its jurisdiction is adversely affected or aggrieved by a final order of the board related to the granting, revoking or discharging of parole or the revoking of post-prison supervision *and after exhaustion of administrative review as provided by board rule*, such person is entitled to judicial review of the final order.

"(2) The final order and the proceedings underlying the order are subject to review by the Court of Appeals upon petition to that court filed within 60 days of the final order for which review is sought." (Emphasis added.)

The first question concerns the phrase emphasized above, which was part of what the legislature added in 1989:[2] Did the phrase "as provided by board rule" refer to the Board rules concerning administrative review that existed when the amendment took effect, on July 25, 1989, or did the 1989 amendment instead contemplate a new Board rule? That question is relevant because, although the Board did make new rules, those rules did not take effect until February 20, 1991.[3] The old rules, which pre-dated the 1989 amendment to ORS 144.335(1), like the old statute, did not require exhaustion of administrative remedies even though those rules established an available procedure for Board review. The Board's orders in all of these consolidated cases were issued after July 25, 1989, but before February 20, 1991.

---

[2] The other changes that Oregon Laws 1989, chapter 790, made to ORS 144.335 are not material to our decision.

[3] The relevant new rule that took effect on February 20, 1991, OAR 255-80-001, concerns three things: (a) "final order" within the meaning of ORS 144.335, (b) the effective date of a final order, and (c) exhaustion of administrative remedies.

The wording of the statute, its context, and its history all point to the exhaustion requirement's becoming operative immediately, under the extant Board rules. In ORS 144.335(1), the phrase "as provided by board rule" modifies "administrative review." An aggrieved inmate may obtain judicial review "after exhaustion," but after exhaustion of what? "[A]fter exhaustion of *administrative review as provided by board rule*." ORS 144.335(1) (emphasis added). That statute means: An inmate must use any process of administrative review provided by Board rule — including the process already in place on the day the act became law — before seeking judicial review.

Context supports that reading of the statute. The *statutes* governing the Board's procedure do not require that there be an administrative review process at all. *Compare, e.g.,* ORS 657.275 (providing for administrative review by Employment Appeals Board of decisions concerning unemployment benefits); ORS 656.295 (providing for administrative review by Workers' Compensation Board of decisions concerning workers' compensation). Thus, for administrative review to be available, it *must* be "provided by board rule." Moreover, as will be demonstrated below, the legislature knew, when adopting the 1989 amendment to ORS 144.335(1), that there already were rules in place establishing and governing a review process.

Nothing in the legislative history suggests that the operative effect of the 1989 amendment would or should be delayed until the Board adopted a new rule. The Board submitted a proposed amendment to ORS 144.335(1) to require that inmates exhaust administrative remedies before seeking judicial review of what otherwise would be final orders. When the Senate Judiciary Committee first considered the proposed amendment, Board Chair Faatz explained the reason for the proposal. He said that, under the then-current procedure, inmates could go directly to the Court of Appeals, bypassing the available but optional administrative review at the Board level, which was governed by Board rule. The Board was asking for the exhaustion requirement to "be inserted so that they [inmates] would be required to come through us first." He explained that the amendment was "very significant" because, in his opinion, it would enable the

Board to reduce its monthly cost for attorney fees significantly. Senate Judiciary Committee, June 6, 1989, Tape 221, Side B at 60-86. *See also* Exhibit D, p 10, SB 1073, House Judiciary Subcommittee (statute is amended "to require the exhaustion of administrative review before a revocation decision can be submitted to the Court of Appeals"). The reduction in fees could be achieved under the Board rule that existed in 1989, with the 1989 amendment to ORS 144.335(1); no new rule was required to reach the result that the amendment sought. There is no hint in the legislative history that the Board would have to promulgate new or amended rules before the exhaustion requirement would become operative. The tenor of the discussion was to give the Board the requested relief immediately.

We hold that the exhaustion requirement of ORS 144.335(1), added by Oregon Laws 1989, chapter 790, section 41, referred to exhaustion of the administrative review process that already was provided by Board rule when the statutory amendment became operative on July 25, 1989. That being so, the exhaustion requirement applied to petitioners, who sought judicial review thereafter. If they did not first seek administrative review, the statute did not entitle them to obtain judicial review. ORS 144.335(1).

■ Petitioners next argue that the Board provided inadequate notice "of the necessity of first requesting administrative review before [they are] entitled to petition the Court of Appeals for judicial review." ORS 183.413(2)(i) required the Board to provide petitioners with adequate notice of their appeal rights before their hearings. ORS 183.413 provides in part:

"(2) Prior to the commencement of a contested case hearing before any agency including those agencies identified in ORS 183.315,[4] the agency shall inform each party to the hearing of the following matters:

"* * * * *

"(i) A description of the appeal process from the determination or order of the agency.

---

[4] These proceedings are "contested cases" within the meaning of ORS 183.310(2)(a). The State Board of Parole and Post-Prison Supervision is an agency "identified in ORS 183.315." ORS 183.413(2).

"* * * * *

"(4)   The failure of an agency to give notice of any item specified in subsections (2) and (3) of this section [including a description of the appeal process], shall not invalidate any determination or order of the agency unless upon an appeal from or review of the determination or order a court finds that the failure affects the substantial rights of the complaining party. In the event of such a finding, the court shall remand the matter to the agency for a reopening of the hearing and shall direct the agency as to what steps it shall take to remedy the prejudice to the rights of the complaining party."

The Board provided pre-hearing notices, which were meant to comply with that section, by giving each petitioner a standard "Board Review Packet." Those packets contained the following notice:

"9.   *Appeals and Administrative Reviews*

"If you wish to appeal the final order, you must file a Petition for Review with the Oregon Court of Appeals within 60 days after the final order is served upon you. * * * You also have the right to administrative review. The request for review must be made within 45 days after the final action of the Board. The administrative review procedure is allowed generally to correct Board error or deal with new information that was not available to the Board or the inmate at the time of the initial prison term hearing."

The adequacy of that notice as "[a] description of the appeal process," ORS 183.413(2)(i), is measured by whether it was reasonably calculated, under all the circumstances, to apprise petitioners of their appeal rights.

Nothing in the notice that the Board provided to petitioners even suggested that petitioners had to exhaust administrative review before seeking judicial review. Instead, the notice listed judicial review as the first form of available relief and stated that petitioners "also" had a right to administrative review. The fair implication of the notice is that petitioners could choose to pursue either form of review. The long-standing prior practice virtually ensured that that was how petitioners would interpret the notice. A case from this court, *Esperum v. Board of Parole, supra,* made it imprudent, before the 1989 amendments to ORS 144.335, to seek administrative review first, because seeking such review did not stay

the 60-day time limit for seeking judicial review. The holding in *Esperum* was in accordance with the administrative rules extant before February 20, 1991, which did not specify that petitioners had to exhaust administrative review. Rather than providing clear notice that the old procedure had changed to a procedure that required exhaustion of administrative review as a condition to the availability of judicial review, the notice that the Board provided pursuant to ORS 183.413(2)(i) appeared to confirm the continuing validity of the old procedure.

■      The state contends that, even if the pre-hearing notice was inadequate, it did not "affect[] the substantial rights" of petitioners, ORS 183.413(4), because they later received adequate notice. The Board provided the following notice in the final orders:

> "You are entitled to an Administrative Review of this order under OAR 255-80-005. Administrative Reviews may be obtained by submitting a written request to the Chairperson within 45 days from the date of this order. You may also obtain Judicial Review of this order by filing a petition for review in the Court of Appeals, State of Oregon Supreme Court Building, Salem, OR 97310, within 60 days of the response to administrative review request. Judicial Review is pursuant to the provisions of ORS 144.335."

That notice went much further than the pre-hearing notice toward informing petitioners that they must exhaust administrative review. It was, however, ambiguous. The Board could have provided notice that was easily understood by all, by simply telling petitioners that they were now required to exhaust their administrative remedies first. Instead, the notice merely hinted that that was required, by stating that a petition for judicial review must be filed "within 60 days of the response to administrative review request." Although the notice can be parsed to give a careful reader the required information, it is a strain to do so in view of its ambiguity and the long-standing contrary practice. In this unique instance, where the pre-hearing notice confirmed the former, contrary practice, we hold that the later notice did not apprise petitioners sufficiently that exhaustion of administrative review was now required as a condition to the availability of judicial review.

■ The opportunity to obtain judicial review on the merits of a Board order concerning a petitioner's parole release date is a substantial right. Providing inadequate notice to petitioners thus affected their substantial rights, because it caused their petitions for judicial review to be dismissed. We, therefore, remand these cases to the Board to provide each petitioner with a notice that describes the appeal process accurately and affords each petitioner an opportunity to seek administrative review, the exhaustion of which would provide a basis for obtaining judicial review. *See* ORS 183.413(4) (where substantial rights of the complaining party are affected, the court shall remand the case to the agency and direct the agency to remedy the prejudice found).

The orders of the Court of Appeals dismissing the petitions for judicial review are vacated. The cases are remanded to the Board of Parole for further proceedings consistent with this opinion.