On respondent's motions to dismiss filed June 16, April 10, September 3, April 10, and September 23, 2003, motions to dismiss denied; board orders reversed; cases remanded for further proceedings August 4, 2004

JAMES M. AYRES,
*Petitioner,*

*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Respondent.*

A121588

ALBERT F. WALZ,
*Petitioner,*

*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Respondent.*

A120892

ROGER M. WALTERS,
*Petitioner,*

*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Respondent.*

A119796

ABDUR RASHID AL-WADUD,
*Petitioner,*

*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Respondent.*

A120823

RICHARD BRIAN BIRD,
*Petitioner,*

*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Respondent.*

A122454
(Cases Consolidated for Opinion Only)

97 P3d 1

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Kathleen Cegla, Assistant Attorney General, for motion in A121588 (Ayres)

James M. Ayres, *pro se, contra.*

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Holly A. Vance, Assistant Attorney General, for motion in A120892 (Walz).

Walter J. Ledesma, Deputy Public Defender, *contra*, and Notice of Intent to Proceed filed August 5, 2003.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Kathleen Cegla, Assistant Attorney General, for motion in A119796 (Walters).

Walter J. Ledesma, Deputy Public Defender, *contra*, and Notice of Intent to Proceed filed December 2, 2003.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Holly A. Vance, Assistant Attorney General, for motion in A121588 (Al-Wadud).

Walter J. Ledesma, Deputy Public Defender, *contra.*

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Steven R. Powers, Assistant Attorney General, for motion in A121588 (Bird).

Richard B. Bird, *pro se, contra.*

Before Brewer, Presiding Judge, and Linder and Wollheim, Judges.

LINDER, J.

**LINDER, J.**

Petitioners in these five cases are inmates in various state correctional institutions who seek judicial review of orders of the Board of Parole and Post-Prison Supervision (board). The board has moved to dismiss their petitions for judicial review, arguing that petitioners, who did not timely seek board review of their "Board Action Forms" (BAFs), failed to exhaust their administrative remedies. *See* ORS 144.335(1)(b) (requiring exhaustion of administrative remedies before persons may seek judicial review of final board orders). Because the factual circumstances of each case are similar, and because the legal analysis benefits by comparing and contrasting those factual circumstances, we have consolidated the cases for purposes of this opinion. As we will explain, we deny the board's motions to dismiss. In addition, on our own motion, we summarily reverse the board's orders on review and remand for further proceedings.

The pertinent facts are procedural in nature and have been provided to us through the parties' memoranda in support of and in opposition to the motions to dismiss. None of the pertinent facts is disputed; as our discussion will note, however, some potentially pertinent facts are unknown and, apparently, unknowable.

In each of the cases, the board issued a BAF that affected either petitioners' parole release or entitlement to a hearing. In response, each petitioner prepared a written request seeking the board's administrative review of the BAF. In four of the five cases, petitioners deposited completed administrative review requests (ARRs) in the institutional mail system before expiration of the 45-day deadline to submit the request. *See* OAR 255-080-0005(2). In particular, petitioner Ayres, who is incarcerated in Ontario, deposited his ARR in the institutional mail 10 days before the deadline. Petitioner Walters, also incarcerated in Ontario, deposited his ARR in the institutional mail six days before the deadline. Petitioners Walz and Al-Wadud, both of whom are incarcerated in Salem, deposited their ARRs in their respective institutional mail systems four days before the deadline. The date

on which those ARRs moved from the institutional mail systems into the United States Postal Service (USPS) is not a matter of record.[1] For all four ARRs, the due date fell on a Monday. In all four instances, despite the varying advance time between the date of deposit in the institutional mail and the date of board's receipt (ten, six, four, and four days, respectively), the board did not receive the requests at its official address in Salem until the day after the ARRs were due.[2]

Unlike the other four petitioners, petitioner Bird, who is incarcerated in Salem, did not deposit his ARR in the institutional mail in advance of the deadline. Instead, he did so on the due date, which was a Monday. The board received it two days later.

The board issued orders in all five cases declining petitioners' requests for administrative review on the ground that the requests were untimely. In doing so, the board adhered to its rule that, to be timely, a request for administrative review must be actually *received* by the board within 45 days of the mailing date of the order to be reviewed. *See* OAR 255-080-0005(2). Each petitioner sought judicial review of the board's order. As earlier described, the board has now moved to dismiss the petitions on the ground that petitioners have failed to exhaust their administrative remedies.

To better frame and resolve the issues that appear to be in dispute between the parties, we asked the parties to file supplemental memoranda specifically addressing three questions. Two of the three questions were directed to the validity of the "actual receipt" requirement of OAR 255-080-0005(2). More particularly, we asked if the rule's receipt requirement violates federal due process principles or runs afoul of the legislative policy of exhaustion codified in ORS 144.335(1)(b). The third question was directed to the adequacy of the board's notice to petitioners informing them of

---

[1] The date on which inmate mail is delivered to the USPS ordinarily could be determined from envelopes, which, as we later explain, necessarily bear cancelled USPS postage. The board appears not to have retained those envelopes, however, as it has neither advised us of those dates nor suggested that the information remains available to it in these cases.

[2] By way of appendix, we have included a chart showing in greater detail the procedural events and their actual dates in each of the petitioners' cases.

their right to seek administrative review of the BAFs. In that regard, we asked if the notice adequately advised petitioners that the board must have actual receipt of an ARR within the 45-day time limitation.

As we explain below, we hold that, at least for unrepresented incarcerated persons, the board's "actual receipt" rule is inconsistent with the legislative policy of requiring petitioners to exhaust their administrative remedies. We further hold that, in the absence of a board rule imposing some other appropriate procedure, filing for purposes of the exhaustion requirement is satisfied if an inmate deposits an ARR in the institutional mail system on or before the 45th day after the mailing date of the board order to be reviewed. In so holding, we do not foreclose the possibility that the board may promulgate some other procedure for inmate filings that better meets the board's needs while accommodating the legislative policies that we describe. But because no such procedural rule was in place for these petitioners, we conclude that their requests for administrative review were timely filed.[3]

Under ORS 144.335(1)(b), a person subject to the board's jurisdiction may seek judicial review of a final order of the board if the person is adversely affected or aggrieved by that order and "has exhausted administrative review as provided by board rule." Before 1989, although the board had procedures in place for administrative review of its orders, neither ORS 144.335 nor the board's rules required those procedures to be invoked as a prerequisite to seeking judicial review. *See generally Jenkins v. Board of Parole*, 313 Or 234, 237-38, 833 P2d 1268 (1992) (describing need for amendment to statute); *Esperum v. Board of Parole*, 296 Or 789, 795-98, 681 P2d 1128 (1984) (pursuing board administrative review did not toll the time to seek judicial review of final board order). The legislature amended the statute[4] by adding the exhaustion requirement, intending in doing so to require "exhaustion of the administrative review process that

---

[3] Our conclusion in that regard renders it unnecessary to reach the issues of the adequacy of the notice provided to petitioners or the dictates of federal due process in this context.

[4] Or Laws 1989, ch 790, § 41.

already was provided by [b]oard rule when the statutory amendment became operative on July 25, 1989." *Jenkins*, 313 Or at 240. The process that the board had in place at the time included a rule that required "[r]equests for administrative review [to] be *made* within forty-five (45) days after the [b]oard's final action on the reviewed issue." *Former* OAR 255-80-005(2) (Nov 1, 1989) (emphasis added). After the statute was amended, the board changed the process to require that the board actually *receive* a request for its review within 45 days. The board's current rule retains that requirement: "The Board must receive requests for administrative review within forty-five (45) days after the mailing date on [*sic*] the Board's final action on the reviewed issue." OAR 255-080-0005(2); *Lovelace v. Board of Parole*, 188 Or App 35, 39, 69 P3d 1234 (2003) (for timely filing, board's rule requires a request for review to be received, not just mailed).

██ Thus, as the legislature has done in other statutory schemes,[5] it has codified in ORS 144.335 the "general rule of administrative law" that, as to matters within the administrative agency's jurisdiction, "[j]udicial review is only available after the procedure for relief within the administrative body itself has been followed without success." *Mullenaux v. Dept. of Revenue*, 293 Or 536, 539, 651 P2d 724 (1982) (internal quotation omitted). Traditionally, the exhaustion doctrine has imposed several requirements on an aggrieved party. First and foremost, a party seeking judicial review of agency action may not bypass available administrative remedies in favor of immediate access to the courts. *Ebert v. Dept. of Rev.*, 307 Or 649, 652-53, 771 P2d 1018 (1989); *Mullenaux*, 293 Or at 540. Nor may the party merely "step[ ] through the motions of the administrative process without affording the agency an opportunity to rule on the substance of the dispute." *Mullenaux*, 293 Or at 541. Instead, the party must present the particular challenges it intends to raise on judicial review first to the administrative body whose review

---

[5] *See, e.g., Mullenaux v. Dept. of Revenue*, 293 Or 536, 540, 651 P2d 724 (1982) (tax statutes reflect the general administrative law principle requiring exhaustion of agency remedies); *Everett v. SAIF*, 179 Or App 112, 118, 38 P3d 952, *rev den*, 334 Or 76 (2002) (workers' compensation scheme reflects well-established administrative law exhaustion principles); *Lyke v. Lane County*, 70 Or App 82, 85-86, 688 P2d 411 (1984) (land use review statutes codify traditional exhaustion principles).

must be exhausted. *Id.*; *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 661-62, 20 P3d 180 (2001). In addition, administrative review must be pursued in a procedurally proper way, which includes requirements of timeliness. *Jackson v. Dept. of Rev.*, 298 Or 633, 637, 695 P2d 923 (1985). As the Oregon Supreme Court has emphasized, "[p]rocedures fixing the time limitations for administrative appeals are no less important than those establishing their manner. In other words, the 'when' of an appeal demands the same rigorous attention as the 'how.' " *Id.*

■■ But the doctrine of exhaustion nevertheless is somewhat "flexible" and is judicially employed to further "orderly procedure and good administration." *Marbet v. Portland Gen. Elect.*, 277 Or 447, 456, 561 P2d 154 (1977) (internal quotation marks omitted). At a minimum, it "goes without saying that for an administrative remedy to be 'exhaustible' it must be available." *Fifth Avenue Corp. v. Washington Co.*, 282 Or 591, 618, 581 P2d 50 (1978). Likewise, any administrative remedy must be adequate to redress the aggrieved party's interests. *See Nutbrown v. Munn*, 311 Or 328, 344-46, 811 P2d 131 (1991), *cert den*, 502 US 1030 (1992) (rejecting various assertions of inadequacy of administrative remedy as excusing exhaustion requirement). Notions of the adequacy and availability of an administrative remedy potentially encompass whether the right to seek the administrative remedy is granted unconditionally, *Lyke v. Lane County*, 70 Or App 82, 85-86, 688 P2d 411 (1984), whether administrative review would be futile, *Albright v. Employment Appeals Board*, 32 Or App 379, 382-83, 574 P2d 344 (1978), and whether the administrative remedy would provide meaningful relief to the aggrieved party, *Nutbrown*, 311 Or at 345-46.

■ With those traditional principles as background, we turn to the particular cases before us. Petitioners, some of whom appear *pro se* and others of whom are represented by counsel, focus on the institutional realities for prisoners in the custody of a correctional institution. *See generally Cleavinger v. Saxner*, 474 US 193, 204, 106 S Ct 493, 88 L Ed 2d 507 (1985) (acknowledging the "situational" problems that color the day-to-day realities between the "keeper and the kept"). Petitioners assert, and the board does not dispute,

that inmates, at least if they do not have counsel, have no significant ability to control or affect timely movement of mail through the institutional mail or the USPS, other than their ability to entrust it to institution officials. Unlike for persons who are not incarcerated, personal delivery of mail to an intended recipient is not an option for unrepresented inmates. Their options depend on how their mail is processed by the Department of Corrections (DOC).

Under DOC rules governing inmate mail, all outgoing inmate mail must be properly addressed, both in terms of the addressee and the inmate's return address, and must bear proper USPS postage. *See* OAR 291-131-0020(2).[6] In the context of mail to the board, which qualifies as "official mail" if the inmate so marks it, the mail receives "special processing," meaning that it is not subject to inspection for mail violations unless the inmate is present or the inspection is ordered by specific officials within the DOC. *See* OAR 291-131-0010(17) (defining "official mail" to include mail to members of the paroling authority); OAR 291-131-0030 (providing for special processing of official mail). Under ordinary circumstances, then, inmates are assured that their outgoing official mail, once deposited in the institutional mail system, will be processed (*i.e.,* placed into the USPS mail system) within the time specified by DOC rules. For several petitioners, that time was one business day. *See former* OAR 291-131-0015(5) (June 1, 1999). For at least petitioner Bird, and possibly petitioner Al-Wadud, that time was two business days. *See* OAR 291-131-0015(5) (Sept 20, 2002).[7]

---

[6] DOC rules requiring inmate use of the USPS system are consistent with those of the Department of Administrative Services (DAS), which establish mail handling procedures for the state. *See* ORS 283.140. Under DAS's rules, interagency mail service is limited to mail that originates from persons employed in some capacity by a state agency and concerns official business of a state agency. OAR 125-040-0001(2). To ensure compliance with USPS regulations, all state delivery and pickup of private mail requires that the mail carry cancelled USPS postage. OAR 125-040-0005(1) and (2).

[7] As the dates in the appended chart reflect, the BAF in petitioner Bird's case was not mailed until March 27, 2003, well past the September 20, 2002, effective date of the rule change by which DOC committed to process inmate mail within two business days rather than one. Whether that change applies to petitioner Al-Wadud is less clear. The BAF in his case was mailed to him on September 18, 2002, just days before the effective date of the rule change. He did not deposit his ARR in the institutional mail system until October 31, 2002, more than a month after the rule change became effective. The change of procedure does not affect our

■ ■ Other than their ability to properly address, post, and deposit their "official mail" in the institutional mail system, petitioners had no ability to control the delivery of that mail to the board in Salem. Nor could they have done so with the assistance of appointed counsel, because they had no right to such counsel at that stage of the administrative process. *See* ORS 144.337 (statutory right to representation by public defense services counsel is limited to *judicial* review by the Court of Appeals under ORS 144.335). Petitioners' mail to the board presumably went, at some point, from the institutional mail system to the USPS mail system. From there, in some instances, it apparently also went through the state's central mail system, where it would have been sorted, routed, and delivered, and thus finally "received" by the board.[8] The time of deposit in the institutional mail to the time of delivery to the board varied widely, from as little as two days to as many as 11 days. That variance appears typical. For example, delivery time (*i.e.*, from deposit in institutional mail until the court's receipt) for the appellate documents filed with this court by the two *pro se* petitioners in these cases, who are incarcerated in Salem and in Ontario, has ranged from one to 18 business days (Salem) and three to six business days (Ontario).

We thus agree with petitioners, who argue that the board, by requiring an ARR to be *received* within 45 days of

---

analysis in these particular cases, however, because we conclude that petitioners in these cases adequately filed for administrative review by depositing their ARRs in the institutional mail system on or before the deadline.

[8] Depending on how it is addressed, USPS mail to state agencies potentially is delivered first to the state's central mail system, rather than directly to an agency's street address, then processed through an additional internal delivery service. *See* ORS 283.140 (authorizing DAS to establish a central mail service); OAR 125-040-0005 (establishing system of pick up and delivery of USPS mail for state agencies). Whether USPS mail is routed through that system depends on whether it is addressed using a unique zip code that the USPS associates with state government only (*i.e.*, 97310), a fact that we judicially notice. We also take judicial notice that, as of the date of this opinion, the board's address is published with differing zip codes, one of which results in USPS delivery through the state's central mail system. *See* http://www.oregon.gov/PAROLE/contact_us.shtml (identifying board's mailing address as "2575 Center St. NE Salem 97310-0470"). The other address results in delivery directly to the board at its street address. *See* http://www.paroleboard.state.or.us (identifying board's mailing address as "2575 Center Street NE, Ste 100, Salem OR 97301-4621"). In these cases, the appellate documents in our files that were served on the board by petitioners, rather than with the aid of counsel, reveal that both zip codes are used by inmates.

the date of mailing of an order, renders the process of filing an ARR unpredictable for inmates in secure custody. That fact, in turn, runs contrary to the principles that underlie the legislative policy of exhaustion. As already discussed, the exhaustion doctrine implies not only the existence of an administrative procedure to exhaust but also its "availability" to the persons who must pursue it. *See Fifth Avenue Corp.*, 282 Or at 618. In that regard, when the legislature amended ORS 144.335 to require exhaustion of board administrative remedies, the process that the board had in place at that time afforded an inmate significantly more control in seeking the administrative remedy because it permitted filing as of the date of mailing. *See former* OAR 255-80-005(2) (Nov 1, 1989). The board did not shift to an actual receipt requirement until later. The Supreme Court has held that the exhaustion requirement, as added to ORS 144.335 in 1989, was intended to refer to the administrative review process that the board had in place at the time. *See Jenkins*, 313 Or at 240. We do not understand that holding to foreclose the board from modifying its administrative review process. But the fact that the legislature codified the exhaustion requirement with awareness of then-existing procedures that permitted inmates to more predictably exercise their right to board administrative review at least *informs* our understanding of the legislature's expectations. That legislative history, coupled with the traditional principles reflected in the exhaustion doctrine, leads us to conclude that the board's "actual receipt" requirement does not comport with the legislative policy reflected in the exhaustion requirement of ORS 144.335.

In arguing to the contrary, the board urges that ORS 144.335 imposes no particular requirements on the board for its process of administrative review "[b]eyond a general requirement that the board adopt[ ] its rules in compliance with the applicable statutes on rulemaking, and provide[ ] a constitutional and otherwise valid means of administrative review * * *." In the abstract, we agree. But a "valid" means of administrative review in this context must be one that meaningfully accommodates the policies underlying the exhaustion doctrine. Those policies include the notion that an administrative remedy, to be "available," must be sufficiently

regular and predictable that it is reasonably accessible to the person invoking the review. The board's actual receipt requirement, for this unique population whose options for delivery of mail to the board are dictated largely by factors beyond their control, does not satisfy that objective. *See generally* Louis L. Jaffe, *The Exhaustion of Administrative Remedies*, 12 Buff L Rev 327, 329, 329 n 7 (1963) (discussing principle, reflected in some cases, that an administrative remedy is not adequate if it is within the control of third persons rather than the aggrieved party).

The board also argues that it has "established a process that allows a reasonable opportunity for review consistent with the board's interest in not reviewing stale orders." In the board's view, the procedure accommodates the unique circumstances of incarcerated persons by providing a generous period for filing an ARR (45 days from the date of mailing of the order to be reviewed), which the board asserts is ample if inmates simply allow adequate time for an ARR to arrive in the board's office. Moreover, the board urges, its rule "requires actual receipt for good reason: while the date that it receives a review request is easily ascertained and documented, the board does not have the resources to regularly resolve disputes as to when an inmate delivered his mail to the [DOC]."

█ The board's argument is not without force. But it is not force enough to carry the day in these cases. The argument overlooks the reality that delivery of mail to the board, as these cases amply demonstrate, is particularly unpredictable. We have no reason to think that the same is not true in reverse—that is, that delivery *to* an inmate of the board's order can be unpredictably protracted. The potential delays on both ends of the process—delivery from the board to an inmate and from the inmate to the board—can dramatically reduce the available time for an inmate to prepare and mail an ARR. That reduction can be compounded by other logistical complications for the inmate population, such as transfers from one institutional facility to another or restrictions on access to law libraries and personal papers.[9] The time and

---

[9] The facts in petitioner Ayres's case, which the board does not dispute, illustrate the problem. When petitioner Ayres received the BAF, he was incarcerated at

logistical constraints for the preparation of an ARR in the secure settings in which inmates are housed have added significance given what an ARR must contain. Unlike a notice of appeal, for example, an ARR must raise and preserve with specificity all issues to be later presented on judicial review, and therefore requires significant substantive content. *See, e.g., Eli v. Board of Parole*, 187 Or App 454, 457-58, 67 P3d 982 (2003) (the petitioner failed to exhaust administrative remedies by failing to raise in his ARR a challenge to the board's conclusion that he committed the charged parole violations). Thus, although we agree that a 45-day deadline for filing an ARR is reasonable, we do not share the board's view that it is exceptionally generous. But the problem, in all events, is not with the time that the board permits. It is with the requirement of actual receipt.

We do not question the legitimacy of the board's interest in a process that permits it to reasonably ascertain and document when an inmate files an ARR. That same interest, no doubt, is why the board fixes the time period for filing the ARR from the date on which the board's order is mailed to an inmate, not the date on which it is received by the inmate. But the street must run two ways: inmates as well as the board are entitled to a reasonably predictable and regular procedure for administrative review. The board's requirement of actual receipt must give way when it serves more as a "snare of forfeiture for a prisoner seeking redress"[10] than as a mechanism to ensure a full opportunity for the board's review, as the exhaustion principle is designed to do. *See Jenkins*, 311 Or at 239-40 (legislature added exhaustion requirement to ORS 144.335 to ensure that inmates would be required to present claims first to the board); *Fish and*

---

a correctional institution in Salem. Within days of receiving it, Ayres was transferred to the correctional institution in Ontario, which at the time was in "lockdown" status. As a result, he had limited access to the institution's law library, and his personal possessions, including the BAF and other documents, were not transferred to him until 10 days before the ARR was due. Ayres prepared and deposited the ARR in the institutional mail on the same day that he obtained his personal possessions, allowing 10 days for it to be delivered to the board. The board, however, did not receive it until the day after it was due, 11 days later.

[10] We borrow the description from *McCoy v. Goord*, 255 F Supp 2d 233, 246 (SDNY 2003) (citing the unreported, but not unpublished, decision in *Rhames v. Fed. Bureau of Prisons*, No. 00 Civ. 4338 (AKH), 2002 WL 1268005, at *5 (SDNY June 6, 2002)).

*Wildlife Dept. v. LCDC*, 37 Or App 607, 615, 588 P2d 80 (1978), *aff'd*, 208 Or 203, 603 P2d 1371 (1979) (goals of exhaustion doctrine include not prematurely interrupting agency review and giving agency, with its specialized expertise and the most information available, a full opportunity to determine factual and policy questions with which it is familiar). We therefore conclude that, for unrepresented inmates, exhaustion under ORS 144.335 does not require an inmate to ensure that the board actually receives an ARR within 45 days after the board mails it. Such a rule is not sufficiently predictable or within an unrepresented inmate's control to comport with the principles that underlie the exhaustion requirement.[11]

■ It necessarily follows that petitioners, to exhaust their administrative remedies, did not have to comply with the board's *actual receipt* requirement for filing an ARR. That conclusion, however, does not mean that petitioners were similarly excused from *filing* within the 45-day time period. A requirement that a person seeking board review submit a request for that review within 45 days is not, in and of itself, inconsistent with exhaustion principles. In effect, then, for purposes of determining whether petitioners in these cases timely sought board review, we are left with a requirement that an ARR must be filed within 45 days, but no enforceable specification by board rule as to what procedural steps are sufficient to accomplish filing. In the absence of an enforceable board-specified procedure for filing that comports with the statutory exhaustion requirement, we must determine whether the steps that petitioners took in these cases were adequate to timely invoke the board's administrative review process. *See generally Jackson*, 298 Or at 637 (court had to construe statutory exhaustion-of-remedies requirement to determine whether exhaustion entailed timely seeking administrative review).[12]

---

[11] The rationale of our decision does not necessarily extend to represented inmates or persons who are within the board's jurisdiction but not incarcerated. We express no view on individuals in those circumstances seeking board administrative review.

[12] We note in that regard that the board, by rule, declares that "[a]n inmate/ offender has exhausted his or her administrative remedies after complying with OAR 255-080-0005, and after the [board issues a final order]." OAR 255-080-0001(2). Although it may be appropriate for the board by rule to alert inmates and

■ If the envelopes in which the ARRs were sent to the board were available to us, we would construe the exhaustion-of-remedies provision to be satisfied if the date of the cancelled USPS postage were on or before the 45-day deadline. Using that date as the date of filing would reasonably accommodate both the board's legitimate interests and those of the inmates. Although inmates do not have direct control over when their mail is processed and given to the USPS, the DOC rules in place give them reasonable assurance that official mail, once placed in the institutional mail system, will enter the USPS mail system within a reasonably predictable period. *See* OAR 291-131-0015(5) (Sept 20, 2002) (inmate mail should be processed within two business days); *former* OAR 291-131-0015(5) (June 1, 1999) (inmate mail should be processed within one business day); *see also* OAR 291-131-0030 (providing for special handling of official mail). Inmates can time their preparation of the ARR and its deposit in the institutional mail system based on those rules. The board's legitimate interests likewise would be served because the filing date could be reasonably "ascertained and documented" based on the postage cancellation date on the envelope containing an ARR, which the board can retain.

■ The problem for us in these cases is that the envelopes bearing the cancelled USPS postage apparently have not been retained by the board; no party has placed them in the record, referred to that date, or otherwise suggested that the envelopes remain in the board's possession. Because of that, we will use the only other date available on the facts before us—the date that petitioners deposited their ARRs in the institutional mail system. As long as the ARRs were so deposited on or before the 45th day after the date of mailing of the board order to be reviewed, they were timely filed. In these cases, it is undisputed that all petitioners met that

---

offenders to the need to exhaust their administrative remedies, the courts are responsible for authoritatively construing what statutory exhaustion entails when, as here, the exhaustion requirement is a prerequisite to *judicial* review and thus a predicate for the court's jurisdiction. Consistently with that, the court in *Jenkins* expressly held that, "[i]n ORS 144.335(1), the phrase 'as provided by board rule' modifies 'administrative review.' " 313 Or at 239. The statute thus involves the traditional allocation of responsibility: the board is to provide for procedures for administrative review; a reviewing court is to determine whether and when those procedures have been appropriately exhausted.

requirement. We will adhere to that rule in future cases unless and until the board promulgates some other procedure for inmate filings that better meets the board's legitimate needs while accommodating the legislative policies that we have described. But because no such other filing rule was in place for these petitioners, we conclude that they timely filed their ARRs and, to that extent, adequately sought to exhaust their administrative remedies. For that reason, we deny the board's motions to dismiss the petitions for review.

 On our own motion, we consider whether we should also summarily reverse the board's orders denying administrative review and remand for further proceedings. We conclude that we should. As the Supreme Court has observed, when an agency has not completed the process of administrative review through no fault of the party who has the obligation to exhaust that review, the usual consequence is for the court to remand the case to the agency for further proceedings. *Mullenaux*, 293 Or at 541. Consistently with that general approach, the Supreme Court remanded to the board in *Jenkins*, where the petitioner's failure to avail himself of the board's administrative review procedure was due to the board's failure to give the petitioner adequate notice that he had to pursue board administrative review before seeking redress in the courts. The appropriate remedy, the court determined, was a remand to the board to conduct the administrative review that the petitioner had not fully exhausted through no fault of his own. *Jenkins*, 313 Or at 242-43 (citing ORS 183.413(4), which provides for remand of a case to the agency when the substantial rights of the complaining party have been prejudiced). Likewise, remand for that purpose is the appropriate remedy in these cases.

Motions to dismiss denied; board orders reversed; cases remanded for further proceedings.

# APPENDIX

| | *Ayres* | *Walters* | *Walz* | *Al-Wadud* | *Bird* |
|---|---|---|---|---|---|
| Where confined: | SRCI[13] (Ontario)[14] | SRCI (Ontario) | OSP (Salem) | OSCI (Salem) | OSP (Salem) |
| Date BAF mailed: | 12/27/01 (Thur) | 7/10/02 (Wed) | 8/30/02 (Fri) | 9/18/02 (Wed) | 3/27/03 (Thur) |
| ARR deposited: | 2/1/02 (Fri) | 8/21/02 (Wed) | 10/10/02 (Thur) | 10/31/02 (Thur) | 5/12/03 (Mon) |
| 45th day after mailing of BAF: | 2/10/02 (Sun) | 8/24/02 (Sat) | 10/14/02 (Mon) | 11/02/02 (Sat) | 5/11/03 (Sun) |
| ARR due: | 2/11/02 (Mon) | 8/26/02 (Mon) | 10/14/02 (Mon) | 11/04/02 (Mon) | 5/12/03 (Mon) |
| AAR received: | 2/12/02 (Tues) | 8/27/02 (Tues) | 10/15/02 (Tues) | 11/05/02 (Tues) | 5/14/03 (Wed) |
| Days ARR deposited before due: | 10 | 6 | 4 | 4 | 0 |
| Days ARR late: | 1 | 1 | 1 | 1 | 2 |

[13] The abbreviations for the institutions represent Snake River Correctional Institution (SRCI); Oregon State Correctional Institution (OSCI); and Oregon State Penitentiary (OSP).

[14] Petitioner Ayres was confined at OSP in Salem when he received a copy of the BAF. Shortly after receiving it, he was transferred to SRCI in Ontario.