On respondent's motion to dismiss filed July 2, petitioner's response to motion to dismiss filed August 16, and respondent's response/objection/reply filed September 26, 2007, motion to dismiss granted; petition for judicial review dismissed March 26, 2008

**ROBERT CRAIG WOODROFFE,**
*Petitioner,*

*v.*

**BOARD OF PAROLE
AND POST-PRISON SUPERVISION,**
*Respondent.*

Board of Parole and Post-Prison Supervision
A135825

182 P3d 202

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Ryan Kahn, Assistant Attorney General, for motion.

Ryan T. O'Connor, Deputy Public Defender, Legal Services Division, Office of Public Defense Services, *contra*.

Before Wollheim, Presiding Judge, and Schuman and Rosenblum, Judges.

WOLLHEIM, P. J.

## WOLLHEIM, J.

Petitioner petitioned for judicial review of an order of the Board of Parole and Post-Prison Supervision. The board moved to dismiss the petition, asserting that this court lacks jurisdiction because petitioner failed to exhaust his administrative remedies. For the reasons discussed below, we dismiss the petition for judicial review because we lack jurisdiction.

The material facts are procedural and not disputed. In 1995, petitioner was convicted of multiple felonies and was sentenced, as a dangerous offender, to an indeterminate sentence not to exceed 30 years. At the time the instant petition was filed, petitioner was an inmate at Snake River Correctional Institution.

On October 12, 2006, the board mailed to petitioner Board Action Form (BAF) #39, which deferred petitioner's release date for 24 months. Petitioner submitted a request for administrative review to the board. Petitioner's request for administrative review was hand-dated November 25, 2006, and November 26, 2006. The board received petitioner's request on November 30, 2006. That request was in an envelope with a United States Postal Service postage "cancellation date" of November 28, 2006. The board denied petitioner's administrative review request as untimely. In response, petitioner filed this petition for judicial review and the board moved to dismiss the petition for lack of jurisdiction.

We describe the applicable statute and administrative rules, beginning with ORS 144.335(1), which provides:

"A person over whom the State Board of Parole and Post-Prison Supervision exercises its jurisdiction may seek judicial review of a final order of the board as provided in this section if:

"(a) The person is adversely affected or aggrieved by a final order of the board; and

"(b) *The person has exhausted administrative review as provided by board rule.*"

(Emphasis added.) The plain meaning of ORS 144.335(1)(b) is that the legislature intended the board to (1) develop rules to implement administrative review procedures that (2) are applicable to all individuals subject to board jurisdiction; and (3) that the failure to follow those rules results in the failure to exhaust administrative review.

One of the rules that the board promulgated, pursuant to ORS 144.335(1), concerns the time within which the board must receive a request for administrative review of the board's action. OAR 255-080-0005(2) provides:

"An inmate/offender must request administrative review within forty-five (45) days after the mailing date on the Board's final action on the reviewed issue. The Board will reject a request for administrative review as untimely unless:

"(a) It is physically received by the Board on or before the 45th day after the mailing date on the Board's final action on the reviewed issue; or

"(b) It is delivered to the Board by mail in an envelope bearing a United States Postal Service (USPS) cancellation stamp dated on or before the 45th day after the mailing date on the Board's final action on the reviewed issue; or

"(c) In the case of an inmate, and in the absence of a legible USPS cancellation stamp, the inmate signed and dated the request and deposited it in the institutional mailing system in compliance with all applicable Department of Corrections rules on or before the 45th day after the mailing date on the Board's final action on the reviewed issue."

By necessity, OAR 255-080-0005(2) implicates the Department of Corrections (DOC) rule on inmate mail, OAR 291-131-0015, which provides, in part:

"(5) Excluding weekends and holidays, incoming and outgoing correspondence should be processed within two days of receipt[.] * * *

"* * * * *

"(7) All mail, excluding packages, shall be routed through the U.S. Postal Service, inter-agency or intra-departmental mail systems. * * *"

The board's argument is straightforward. The board mailed its BAF to petitioner on October 12, 2006. For petitioner's administrative review request to be timely, the board had to receive the request on or before the forty-fifth day after the mailing date or, if delivered by the USPS, the request had to have been in an envelope bearing a cancellation stamp dated on or before the forty-fifth day. The forty-fifth day after mailing was Sunday, November 26, 2006. Because the forty-fifth day was a Sunday, petitioner's request had to be received by the board or postmarked by the USPS by Monday, November 27, 2006. The board received petitioner's request for administrative review on November 30, 2006. The USPS cancellation date was legible and that date was November 28, 2006.[1] Pursuant to OAR 255-080-0005(2)(b), the request for administrative review was untimely. Petitioner did not exhaust his administrative remedies as provided by board rule. Therefore, this court lacks jurisdiction.

Petitioner's argument is more oblique.[2] First, he argues that he exhausted administrative remedies, as required by ORS 144.335, by submitting his request for administrative review with the institutional mail system at Snake River Correctional Institution by the forty-fifth day, on November 26, 2006. In support of his argument, petitioner cites *Ayres v. Board of Parole*, 194 Or App 429, 97 P3d 1 (2004), *rev den*, (Jan 10, 2006). Second, petitioner argues that ORS 144.335(1)(b) and OAR 255-080-0005(2)(b) violate both the Oregon and United States constitutions. We consider each of his arguments.

### COMPLIANCE WITH ORS 144.335(1)(b) AND OAR 255-080-0005(2)

In *Ayres*, we reversed the board's orders concluding that the petitioners had not exhausted their administrative

---

[1] The administrative rules do not define "cancellation stamp." The record includes a photocopy of the envelope that contained petitioner's administrative review request. The "postage mark" on the envelope includes the date "11/28/2006" in addition to the metered postage amount and the phrase, "Mailed From [zip code] US POSTAGE." Neither party contends that the postmark date "11/28/2006" is not the cancellation stamp.

[2] Petitioner implicitly concedes that if OAR 255-080-0005(2)(b) applies, it is consistent with ORS 144.335(1) and it is constitutional, then he did not exhaust his administrative remedies.

remedies under ORS 144.335(1). The administrative rule in effect when we decided *Ayres* required that the board *actually receive* the request for administrative review on or before the forty-fifth day. There were no other methods. We held that, for unrepresented incarcerated persons, "the board's 'actual receipt' rule [was] inconsistent with the legislative policy of requiring petitioners to exhaust their administrative remedies." *Ayres*, 194 Or App at 434. We further held that, until the board adopted a different rule to satisfy the exhaustion of remedies requirement contained in ORS 144.335(1)(b), an inmate satisfies the exhaustion of remedies requirement by depositing the request in the institutional mail system on or before the forty-fifth day. *Id.*

Petitioner argues that we should extend the institutional mail box "rule" to all unrepresented incarcerated persons. In support of that argument, he suggests that the current administrative rule suffers from the same deficiencies as the old rule in *Ayres* because the current rule is also "unreasonably unpredictable." We disagree. Although it is *dictum,* *Ayres* addressed this exact argument:

> "If the envelopes in which the [requests for review] were sent to the board were available to us, we would construe the exhaustion-of-remedies provision to be satisfied if the date of the cancelled USPS postage were on or before the 45-day deadline. Using that date as the date of filing would reasonably accommodate both the board's legitimate interests and those of the inmates. Although inmates do not have direct control over when their mail is processed and given to the USPS, the DOC rules in place give them reasonable assurance that official mail, once placed in the institutional mail system, will enter the USPS mail system within a reasonably predictable period. *See* OAR 291-131-0015(5) (September 20, 2002) (inmate mail should be processed within two business days). * * * Inmates can time their preparation of the [requests for review] and [their] deposit in the institutional mail system based on those rules. The board's legitimate interests likewise would be served because the filing date could be reasonably 'ascertained and documented' based on the postage cancellation date on the envelope containing the [requests for review], which the board can retain."

194 Or App at 443.

The board adopted the type of rule we contemplated in *Ayres*. OAR 255-080-0005(2) provides that a request for review is timely if the USPS cancellation stamp is on or before the forty-fifth day, even if the board does not actually receive the request until after the forty-fifth day. Additionally, the record established that DOC complied with OAR 291-131-0015(5) because DOC processed petitioner's request for review within two days of receipt. Based on the facts in this case and for the reasons expressed in *Ayres*, we hold that OAR 255-080-0005(2)(b) is consistent with ORS 144.335(1)(b).

Petitioner next argues that ORS 144.335(1)(b) and OAR 255-080-0005(2)(b) violate Article I, section 20, of the Oregon Constitution and the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution. In analyzing petitioner's constitutional claims, we follow our usual paradigm: We consider state constitutional claims before considering federal constitutional claims. *See State v. Cookman*, 324 Or 19, 25, 920 P2d 1086 (1996) (so stating).

## ARTICLE I, SECTION 20

■      Article I, section 20, of the Oregon Constitution provides: "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens." Relying on that provision, petitioner argues that the legislature granted citizens "the 'privilege' of a statutory right to judicial review of final board orders" and as a consequence, ORS 144.335(1)(b), by authorizing the board's "postmark rule," OAR 255-080-0005(2)(b), "creates a true non-suspect class of *pro se* inmates."

We disagree that ORS 144.335(1)(b) and OAR 255-080-0005(2)(b) create a true class. In *State v. Clark*, 291 Or 231, 630 P2d 810, *cert den*, 454 US 1084 (1981), the court discussed true classes and that discussion informs our analysis in this case. In *Clark*, the Supreme Court stated:

> "The terms 'class' and 'classification' are invoked sometimes to mean whatever distinction is created by the challenged law itself and sometimes to refer to a law's disparate

treatment of persons or groups by virtue of characteristics which they have apart from the law in question. Familiar examples of the latter kind of 'class' are personal characteristics such as sex, ethnic background, legitimacy, past or present residency or military service. On the other hand, every law itself can be said to 'classify' what it covers from what it excludes. *For instance, the rule of this court that limits the time for filing a petition for review (Rule 10.05) 'classifies' persons by offering the 'privilege' of review to those who file within 30 days and denying it to those who file later.* * * * Attacks on such laws as 'class legislation' therefore tend to be circular and, as the above quotations from early decisions show, have generally been rejected whenever the law leaves it open to anyone to bring himself or herself within the favored class on equal terms."

291 Or at 240-41 (emphasis added). ORS 144.335(1) applies to all persons subject to the board's jurisdiction, and all persons who are subject to that jurisdiction must exhaust administrative remedies. OAR 255-080-005(2)(b) is analogous to the example discussed in *Clark*. OAR 255-080-0005(2)(b) classifies persons by limiting the privilege of judicial review to those who have first exhausted their administrative remedies. The distinction is created by the statute and administrative rule. There is no true class. *See State ex rel Huddleston v. Sawyer*, 324 Or 597, 610, 932 P2d 1145, *cert den*, 522 US 994 (1997) ("Laws involving classifications [of persons] created by statute 'are entitled to no special protection and, in fact, are not even considered to be classes for the purposes of Article I, section 20.' *Sealey v. Hicks*, 309 Or 387, 397, 788 P2d 435, *cert den*, 498 US 819 (1990).").

For the reasons discussed, we hold that ORS 144.335(1)(b) and OAR 255-080-0005(2) do not violate Article I, section 20, of the Oregon Constitution.

## EQUAL PROTECTION CLAUSE

■ ■ Petitioner's equal protection challenge is similarly unavailing. The Equal Protection Clause provides: "No State shall * * * deny to any person within its jurisdiction the equal protection of the laws." As the Oregon Supreme Court stated in *State v. Orueta*, 343 Or 118, 127, 164 P3d 267 (2007), "[a]

classification that 'neither burdens a fundamental right nor targets a suspect class' will satisfy the Equal Protection Clause 'so long as it bears a rational relation to some legitimate end.' " (quoting *Romer v. Evans*, 517 US 620, 631, 116 S Ct 1620, 134 L Ed 2d 855 (1996)). For the same reasons that the statute and administrative rule do not violate Article I, section 20, we conclude that the statute and administrative rule do not violate the Equal Protection Clause. Petitioner is not a member of any class that would trigger scrutiny more exacting than rationality review.

Petitioner asserts that the board's rule is too unpredictable and arbitrary to be rationally related to any legitimate government interest. He argues that *pro se* inmates must rely on third-party DOC employees to process their outgoing mail for delivery by the USPS. Petitioner further argues that such reliance unreasonably constrains *pro se* inmates from exercising the privilege of judicial review. We disagree.

■       As described previously, the board's rule for exhaustion of administrative remedies, OAR 255-080-0005(2)(b), and DOC's rule for inmate mail, OAR 291-131-0015(5), establish predictability and certainty in the administrative scheme: There is a deadline for an inmate's request for administrative review, and an inmate must comply with the rules for outgoing mail when submitting that request. Using the postage cancellation date as the mailing date reasonably accommodates both the board's—*viz.* government's—legitimate interests in having reasonably ascertainable and documented mail dates and the interests of inmates. *See Ayres*, 194 Or App at 443 (so stating). Thus, the board's and DOC's rules have a rational relationship to a legitimate government interest and do not violate the Equal Protection Clause of the United States Constitution. Moreover, the Equal Protection Clause is not violated if there is an available and reasonable means by which an individual may advance his or her claims. In this case, the fact that petitioner failed to comply with an essential step in the administrative review process, and as a consequence is barred from the judicial review process, does not render the entire administrative process unconstitutional.

In *Bartz v. State of Oregon*, 314 Or 353, 839 P2d 217 (1992), the court considered a similar issue. In *Bartz*, the petitioners asserted various constitutional challenges to the filing deadlines imposed by the Oregon Post-Conviction Hearing Act. In rejecting the petitioners' arguments, the court stated that "a reasonable time limitation may be placed on the assertion of a state constitutional claim." 314 Or at 365. In so concluding, the court reviewed federal jurisprudence and noted that same reasoning applied to federal constitutional claims: "The law is well settled that a state may attach reasonable time limitations on the assertion of federal constitutional rights * * *." *Id.* (citing *United States v. Randolph*, 262 F2d 10 (7th Cir 1958), *cert den,* 359 US 1004 (1959)) (ellipsis in original).

## DUE PROCESS CLAUSE

Petitioner also asserts violations of Procedural Due Process as guaranteed by the Fourteenth Amendment to the United States Constitution. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." The United States Supreme Court has stated that "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 US 319, 333, 96 S Ct 893, 47 L Ed 2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 US 545, 552, 85 S Ct 1187, 14 L Ed 2d 62 (1965)).

■ When considering procedural due process claims, the court asks two questions. The first question is whether the state has deprived a person of a liberty or property interest within the meaning of the Due Process Clause. If there has been such a deprivation, the second question is what process is due. *Wilkinson v. Austin*, 545 US 209, 224, 125 S Ct 2384, 162 L Ed 2d 174 (2005).

■ Petitioner argues that, by deferring his release date by 24 months, the board deprived him of a liberty interest. We agree with petitioner that the private interest at stake here is a liberty interest. *See Stogsdill v. Board of Parole*, 342 Or 332, 337, 154 P3d 91 (2007) (a prisoner's state-created interest in being released early from prison is a liberty interest within the meaning of the Due Process Clause). We note,

however, that petitioner's liberty interest is something less than absolute because the board's determination to defer petitioner's release from prison is not a permanent deprivation and because he is presently incarcerated as a result of his criminal convictions.

We next consider how much process is due. Petitioner essentially argues that the current board rule is too unpredictable for *pro se* inmates because *pro se* inmates cannot control DOC employees. He argues that the only predictable method of processing an inmate's request is to adopt an institutional mailbox rule. Only the adoption of an institutional mailbox system, petitioner argues, will guarantee that an inmate can exhaust administrative review and, therefore, be able to seek judicial review, which could protect an inmate from serving too much time in prison or on supervision.

In *Alexander v. Board of Parole*, 205 Or App 443, 134 P3d 1055, *rev den*, 341 Or 449 (2006), we stated:

> "Due process is flexible and calls for such procedural protections as the particular situation demands. * * * In determining what procedures are required in a particular proceeding, we consider (1) the individual interest at stake; (2) the risk of error, including the probable value of additional safeguards; and (3) the countervailing public interest. *Mathews*, 424 US at 335. As pertinent here, due process requires that the individual be afforded an opportunity to be heard at a meaningful time and in a meaningful manner * * *."

205 Or App at 451-52 (footnote omitted; some citations omitted). In *Alexander,* the petitioner brought a due process challenge to the board's fact-finding procedures, specifically challenging the requisite evidentiary standard the board must use. In that case, we stated that the basic question was whether the relevant fact-finding procedures were constitutionally sufficient. *Id.* at 452.

Applying that reasoning here, the analogous question is whether the board's administrative rule concerning exhaustion of administrative review is constitutionally sufficient. Stated differently, we ask whether the board's use of the USPS postage cancellation stamp comports with due process.

We conclude that it does. As previously discussed, petitioner satisfied the first *Mathews* factor, an individual interest at stake, because he has a limited liberty interest at stake. The second *Mathews* factor is "the risk of an erroneous deprivation of [the private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural standards." *Mathews*, 424 US at 335. Petitioner argues that, if the board does not adopt an institutional mailbox rule, "there is a great risk of erroneously and arbitrarily depriving an indigent inmate of his liberty." In support of his argument, petitioner advances a hypothetical: "A DOC employee could fail to timely forward the [request for administrative review] to the USPS" causing an otherwise timely request for administrative review to become untimely.[3] While petitioner's hypothetical is theoretically possible, that is not what happened here. As previously noted, petitioner's request to the board was untimely not because a DOC employee failed to timely forward his request to the USPS but because petitioner did not allow for the two days required under the DOC's administrative rule for outgoing inmate mail. OAR 291-131-0015. Accordingly, the risk of erroneous deprivation, under the facts of this case, is minimal. *See Mathews*, 424 US at 344 (stating that the focus of procedural due process analysis is one of general applicability as opposed to the "rare exception" regarding the risk of error inherent in the administrative procedures at issue). Understood in this context, the probable value of additional or substitute procedures is similarly nominal.

We next consider the third *Mathews* factor, "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." 424 US at 335. Petitioner posits that "there is no evidence that an institutional mailbox rule would significantly burden the board" and that "[i]n fact, the board's current rules require it to utilize the institutional mailbox rule in the absence of [a] legible postmark." OAR 255-080-0005(2)(c). He then extrapolates

---

[3] We do not address the outcome if an inmate's request for administrative review was not processed and deposited in the USPS within the time prescribed by OAR 291-131-0015(5).

that the board must already have procedures in place to accommodate his proposed institutional mailbox rule.[4]

Although the board has not identified any administrative burdens that would come with implementing the substitute procedural requirement that petitioner advances—the "institutional mailbox rule"—it did identify the government function that its current rule serves. In its response to petitioner's untimely request for administrative review, the board explained that it has consistently adhered to OAR 255-080-0005(2), its exhaustion of review rule, for its rehabilitative effect and to maximize fairness and transparency in the process. Additionally, petitioner concedes that "[t]he board has an interest in enacting administrative rules that it can efficiently and consistently enforce." Moreover, in *Mathews*, the Supreme Court recognized that there are always additional fiscal and administrative costs associated with more or different procedures and that those costs are not insubstantial. 424 US at 347-48.

Petitioner has not identified any *meaningful risk* of error that would result from the continued use of OAR 255-080-0005(2). We conclude that the rule comports with procedural due process. Accordingly, petitioner failed to exhaust administrative remedies and this court lacks jurisdiction to review his petition for judicial review.

Motion to dismiss granted; petition for judicial review dismissed.

---

[4] We note that it is the DOC, and not the board that oversees outgoing inmate mail.